**UNITED STATES of America, Plaintiff-Appellant,**

**v.**

**S. Steve SOURAPAS and Crest Beverage Company, Defendants-Appellees.**

**No. 74–2565.**

United States Court of Appeals, Ninth Circuit.

March 27, 1975.

As Corrected on Denial of Rehearing and Rehearing En Banc June 3, 1975.

David P. Curnow, Asst. U. S. Atty., San Diego, Cal. (argued), for plaintiff-appellant.

James S. Marinos, San Diego, Cal. (argued), for defendants-appellees.

## OPINION

Before CHAMBERS, Chief Judge, VAN OOSTERHOUT,* Circuit Judge, and EAST,** District Judge.

VAN OOSTERHOUT, Circuit Judge:

An indictment was returned by the grand jury against Crest Beverage Company (Crest) and S. Steve Sourapas, president of Crest, charging both with attempted income tax evasion and subscribing to false income tax returns. Motion by both of the defendants was filed June 25, 1974, to suppress evidence obtained by Special Agent Saetta derived from examination of defendants' records during the period from November 10 to November 14, 1969 and for the return of any property seized.[1] Such motion, after a hearing, was sustained by the trial court on September 2, 1974, solely upon the ground that the special

revenue agent had failed to comply with IR–897 publicized by a press release on October 3, 1967, as amended by IR–949 publicized by a press release on November 26, 1968.[2] The Government has appealed from such order pursuant to 18 U.S.C. § 3731.

The three grounds urged by the defendants in support of their motion to suppress are:

1. )The records were obtained by fraud, trick and deceit.

2. The November 10 examination violated the re-audit provisions of the IRC.

3. The November examination was in violation of IRS publicized regulations.

The court filed no memorandum opinion or detailed findings of fact but his views are expressed in statements incorporated in the record. The prosecuting attorney, before closing his evidence, made the following inquiry: "But I do have two other witnesses that I would like to call, but I think I might shortcut that if I can determine * * * if the Court's concern is anything other than the press release and regulations proce-

---

* The Honorable Martin D. Van Oosterhout, Senior Circuit Judge, Eighth Circuit, sitting by designation.

** The Honorable William G. East, Senior District Judge, Oregon, sitting by designation.

1. A prior motion filed on April 3, 1974, to suppress fruits of an examination of taxpayers' records by revenue agents on September 4 and 5, 1969, was denied on June 5, 1974, and motion to reconsider said ruling was denied on July 2, 1974. The validity of such rulings is not before us on this appeal.

2. The press release covering IR–949, November 26, 1968, reads:

Washington, D. C.—Change in the procedure for advising taxpayers of their rights during an investigation conducted by a Special Agent of the IRS Intelligence Division were announced today by the Internal Revenue Service.

The new procedure goes beyond most legal requirements that are designed to advise persons of their rights.

One function of a Special Agent is to investigate possible criminal violations of Internal Revenue laws. At the initial meeting with a taxpayer, a Special Agent is now re-

quired to identify himself, describe his function, and advise the taxpayer that anything he says may be used against him. The Special Agent will also tell the taxpayer that he cannot be compelled to incriminate himself by answering any questions or producing any documents, and that he has the right to seek the assistance of an attorney before responding.

Previously, the Special Agent identified himself and described his function at the first meeting with the taxpayer but was not required to give further advice unless the taxpayer was in custody or the investigation proceeded beyond the preliminary stage.

IRS has made no change in its existing instructions that if it becomes necessary to interview a person who is in custody, an Agent must give a comprehensive statement of rights before any interrogation. This statement warns the person in custody that he may remain silent and that anything he says may be used against him.

A person in custody also must be told that he has the right to consult or have present his own counsel before making a statement or answering any questions, and that if he cannot afford counsel he can have one appointed by the U. S. Commissioner.

dure which were set up by the IRS." The court responded, "No; that's my concern, and if your other witnesses would just reiterate that in any way, they're not necessary."

During the course of the argument the following colloquy took place between the prosecutor and the court:

"THE COURT: Let me tell you, Mr. Curnow, the third is the only one I'm interested in.

MR. CURNOW: All right, your Honor, and I'm trying to get my record straightened out because I have a feeling as to what may happen.

I take it, then, the Court would make a finding that there was no fraud and deceit as that is set forth in the first point in the defense—

THE COURT: That is my inclination at this time.

MR. CURNOW: And I would also take it that the Court may also find there was no violation of reaudit procedures.

THE COURT: That's my inclination, but I'm very troubled by the third problem.

\*     \*     \*     \*     \*     \*

MR. CURNOW: Your Honor, I hope that the Court's remarks are addressed specifically to the ruling that they failed to comply with the regulation.

THE COURT: Oh, surely, absolutely, absolutely, no other way, . . ."

■ The Court's findings on grounds 1 and 2 of the motion are supported by substantial evidence and are not clearly erroneous. Thus, the dispositive issue is whether Special Agent Saetta failed to substantially comply with the publicized IRS procedures and if so, whether the evidence suppressed was wrongfully obtained as to Sourapas and as to Crest.

Other revenue agents who made the September examination of Sourapas' and Crest's records referred to in footnote 1 filed an information report which was received by the Los Angeles Intelligence Division. A preliminary criminal investigation was authorized on October 9, 1969. Special Agent Saetta was assigned to make the criminal investigations of Crest and Sourapas. Saetta on November 10 met Sourapas, president and principal owner of Crest, in Crest's office and obtained permission to examine Crest records. The agent introduced himself as a special agent and presented his credentials and advised Sourapas that the function of a special agent was to investigate alleged violations of internal revenue laws, but apparently did not specifically advise that he was there to make a criminal investigation. There is some dispute as to the precise warning that was given. Our examination of the record satisfies us that Saetta did not substantially comply with the publicized IRS regulations heretofore referred to.

We will discuss separately the effect of such non-compliance upon the validity of the suppression order as to Sourapas and Crest.

■ We shall first consider the situation with respect to Sourapas. The trial court as a basis for suppressing the evidence relied upon United States v. Leahey, 434 F.2d 7 (1st Cir. 1970) and United States v. Heffner, 420 F.2d 809 (4th Cir. 1969). Said cases point out that an individual has fifth amendment protection against self-incrimination. They acknowledge that the warning required by the IRS regulations where the individual is not taken into custody goes beyond the requirements of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), but hold that the IRS is bound by its own regulations under the facts presented in such cases. The reasoning of the cases just cited supports the trial court's determination upon the record before us, that any information obtained from Sourapas' personal records or answers to questions should be suppressed by reason of Saetta's failure to comply with the regulations. For a good exposition of a contrary result, see United States v. Fukushima, 373 F.Supp. 212 (D.Hawaii 1974).

The trial court expressed doubt whether the record reflected any personal

records of Sourapas were seized or examined but ordered the suppression and return of any papers or evidence that might have been seized. Saetta testified his examination was confined strictly to corporate records and that he made no investigation of Sourapas' personal records.

■ Neither the motion to suppress nor the order specifically describe any personal records that may have been wrongfully examined. At the criminal trial, in the event the Government offers any personal papers, records or statements, Sourapas can raise the issue that such evidence was wrongfully obtained or seized, or the fruit of the poisoned tree, and can obtain appropriate relief. For reasons hereinafter stated, the suppression order with respect to Sourapas is modified to the extent that the suppression shall not cover corporate records and as so modified, the suppression order as to Sourapas is affirmed.

■ It is firmly established that a corporation has no fifth amendment protection against self-incrimination and that neither the corporation, a corporate officer or any other person can prevent the production for examination of relevant corporate records. Bellis v. United States, 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974); United States v. White, 322 U.S. 694, 698, 64 S.Ct. 1248, 88 L.Ed. 1542 (1944).

We find nothing specific in the IRS regulations stating that the self-incrimination portion of the regulations are applicable to corporations. Appellants suggest that the use of the word "taxpayer" several times during the course of the regulations requires a construction that the fifth amendment self-incrimination warning be given to a corporation. The second paragraph of footnote 2, *supra,* reads: "The new procedure goes beyond most legal requirements that are designed to advise *persons* of their rights." In the third paragraph the taxpayer is described as "he" and "him" and at other places throughout the regulations the personal pronoun is used to describe the taxpayer.

■ An interpretation of the regulation which would require the agent to advise a corporation that it has a right not to incriminate itself would require the agent to state an erroneous view of the law. We believe that a reasonable interpretation of the regulation is that it applies only to individual taxpayers and not to corporations.

■ Individual and not corporate records were involved in *Leahey* and *Heffner, supra.* Consequently, such cases lend no support to the suppression of the corporate records. It would be unreasonable to interpret the regulations to pertain to the examination of corporate records in light of the clearly established law that a corporation or officer thereof has no constitutional right to withhold corporate records which might incriminate. In United States v. Habig, 474 F.2d 57 (7th Cir. 1973), *Miranda* warnings were not given by the special agent who obtained an officer's consent to examine the corporate records. The court recognized that the corporation had fourth amendment protection against unlawful search and seizure under appropriate circumstances. The court held that no fifth amendment rights were violated by obtaining the officer's consent to examine the corporate records absent *Miranda* warnings. The court held:

"In the case before us there was no theft of corporate records nor any other form of trespass on corporate property. The fact that a criminal investigation has been started was concealed from the defendants for a period of time did not make involuntary the otherwise voluntary consent of Schroering to inspection of the corporate records. Schroering was aware of Lawrence's identity as an Internal Revenue agent, and Schroering had no constitutional privilege to refuse the production of corporate records when Lawrence so requested, provided the records requested were relevant to tax matters under investigation. It was his duty to make the records available regard-

less of whether the investigation had shifted from a civil to a criminal emphasis or whether he might himself be incriminated. Wilson v. United States, *supra*; *see* Curcio v. United States, *supra*; United States v. Sclafani, 265 F.2d 408, 415 (2d Cir.), cert. denied, 360 U.S. 918, 79 S.Ct. 1436, 3 L.Ed.2d 1534 (1959). The same is true with respect to Habig. It is irrelevant that no summons, subpoena, or search warrant was used. If production of the records had been refused, the agents could have obtained them by summons under 26 U.S.C. §§ 7602, 7604. The fact that the agents did not resort to this measure does not mitigate against the consensual production of the records. Greene v. United States, 296 F.2d 841, 843 (2d Cir., 1961)." 474 F.2d at 62.

We agree with such holding and determine that the trial court erred in suppressing the corporate records and any information obtained therefrom.

Moreover, the earlier examination by the revenue agents referred to in footnote 1 might well constitute an independent source for a subsequent subpoena to produce the corporate records. *See* Standard Oil Co. v. State of Iowa, 408 F.2d 1171, 1176–77 (8th Cir. 1969).

Both individual and corporate taxpayers are entitled to fair treatment by the Internal Revenue Service. Since there are no implications of self-incrimination present where a corporate taxpayer is involved, the suppression order is a harsh weapon to use in the exercise of supervisory authority. In the corporate situation presented here, in event the agent has in fact violated any of the IRS self-imposed regulations, the agency's own disciplinary procedures should be sufficient to protect corporations which come under investigation.

The judgment suppressing any evidence that might have been obtained by Agent Saetta from the personal records or statements of Sourapas during the November examination is affirmed except that it is modified to exclude the suppression of corporate records of Crest. The question of whether any evidence offered at the criminal trial is the fruit of the poisoned tree flowing from an examination of Sourapas' individual records is left for determination by the trial court when and if such evidence is presented.

The judgment suppressing the corporate records of Crest and any information obtained therefrom is reversed.

Modified and affirmed as to Sourapas. Reversed as to Crest.

## ORDER ON PETITION FOR REHEARING

### PER CURIAM:

The motion of the government to correct the opinion herein reported as 515 F.2d 295, (9th Cir. 1975), is granted. In the opinion the term "Revenue Agent" is used. We think a "Special Agent" is generically within the term "Revenue Agent." But it should now be understood that "Revenue Agent," as it appears in the opinion means "Special Agent." The government feels this is important.

The petition of the appellees for a rehearing in banc is first treated as a petition for a rehearing by the panel. As such, the petition is denied by the panel.

Secondly, the petition of the appellees for a rehearing is treated as a suggestion for a rehearing in banc.

The panel has advised the court in banc (Circuit Judge Wallace not participating) of the panel's vote. No circuit judge has requested a rehearing in banc. Therefore, the suggestion for a rehearing en banc is denied.