UNITED STATES of America, Plaintiff,

v.

Stephen Ray NEWELL, Defendant.

Crim. No. 77–0491.

United States District Court,
S. D. California,
Fourth Division.

Nov. 2, 1977.

Stephen V. Petix, Asst. U.S. Atty., San Diego, Cal., for plaintiff.

Frank M. Murphy, III, San Diego, Cal., for defendant.

## AMENDED OPINION

GORDON THOMPSON, Jr., District Judge.

On March 6, 1976 the defendant became an unauthorized absentee (UA) from the Navy. He returned to the Navy on December 24, 1976, and five days later the unauthorized absence offense was referred to a special court-martial by the defendant's commanding officer.

The arson of which the defendant is presently accused in this court occurred on January 1, 1977. Newell was identified as a suspect on January 3, but was not interviewed regarding the arson until January 14. In the interim between his identification as a suspect and later interview, Newell was appointed counsel, Lt. Richard Bloxom, on the UA charge. On January 13, the day before defendant's initial interview regarding the arson offense, Lt. Bloxom consulted with Newell on the UA charge.

The initial January 14th interview of Newell regarding arson was conducted by Naval Investigative Service (N.I.S.) Agent Richard Dempsey. After preliminary questioning indicated that Newell was indeed a suspect, Agent Dempsey gave the defendant a formal advisement of rights pursuant to Article 31 of the Uniform Code of Military Justice (U.C.M.J.) and the military case of *United States v. Tempia*, 16 C.M.A. 629, 37 C.M.R. 249 (1967) (the military counterpart of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)). The defendant executed a written waiver form witnessed by Agent Dempsey. At no time did Newell inform Agent Dempsey that he had appointed counsel on the UA charge, express a desire to consult with Lt. Bloxom, or in any other manner convey to Agent Dempsey a wish to consult with an attorney.

After waiving his *Tempia/Miranda* rights, Newell stated to Agent Dempsey that he knew who had started the fire, but did not wish to discuss it. The defendant then requested an opportunity to consult with a Salvation Army chaplain. Newell was allowed to leave the N.I.S. office to meet with the chaplain, but the meeting never took place. After Agent Dempsey had tracked Newell down at his barracks later that same afternoon, Newell informed him that he was now willing to talk.

Agent Dempsey suggested they return to the N.I.S. office which they did. Newell was once again formally advised of his *Tempia/Miranda* rights, which were again waived in writing. He then proceeded to implicate another sailor, McKnight, in the arson, claiming that he saw McKnight running from the scene of the fire at about the time it was set. The McKnight lead was investigated and found to be false. However, Agent Dempsey was unable to reinterview Newell because on January 30, 1977 Newell had once again become an unauthorized absentee.

After being apprehended by Agent Dempsey on February 17, 1977, Newell spontaneously requested a polygraph examination to establish his lack of involvement in the arson. A polygraph examination was arranged for February 22, 1977. Prior to the examination the polygraph examiner, N.I.S. Agent Naylor advised Newell of his *Tempia/Miranda* rights which he again waived in writing. Thus, the examination and subsequent questioning, like all prior questioning, was conducted without counsel being present. The polygraph examination resulted in a confession by the defendant and an eventual sworn statement following yet another advisement of rights and waiver.

The defendant is before this court because he was able to successfully challenge military jurisdiction on the ground of recruiter misconduct. He now seeks suppression in the federal district court of all statements made to N.I.S. Agents Dempsey and Naylor claiming primarily that he was deprived of his *military statutory* right to counsel as guaranteed by the recent Military Court of Appeals cases of *United States v. McOmber*, 24 C.M.A. 207, 51 C.M.R. 452, 1 M.J. 380, (1976) and *United States v. Lowery*, 25 C.M.A. 85, 54 C.M.R. 452, 1 M.J. 1165 (1976). Secondarily he asserts that the warnings given by Agents Dempsey and Naylor were deficient under *Miranda* because no mention was made of

possible use of his statements in a federal criminal prosecution.

Before turning to the legal issues raised by the defendant's motion, one important, but not crucial, factual issue should be explicitly resolved—Agent Dempsey's knowledge or lack thereof that Newell had been appointed counsel on the UA charge when the questioning of Newell in the absence of counsel took place on January 14, and February 22, 1977. This court finds that Agent Dempsey had no *actual* knowledge that counsel had been appointed; he so testified and the Court believes him. However, he was aware of sufficient circumstantial indications of the appointment by February that he should have known of it. Therefore, the court finds that Agent Dempsey had constructive, but not actual, knowledge on February 22, 1977 (but not on January 14, 1977) that Newell was represented by appointed counsel on the UA charge.

Even with the foregoing finding that Agent Dempsey had constructive knowledge on February 22, 1977 that counsel had been appointed on the UA case, defendant cannot prevail on his motion to suppress statements. Indeed, even a finding of actual knowledge would be of no assistance to defendant. The motion to suppress statements must be denied first because granting it would require an expansive interpretation of military case law this court is unwilling to make. But, even assuming the expansive interpretation of *Lowry* and *McOmber* urged by defendant is correct and the questioning of defendant did violate military law, adoption by a federal district court of an exclusionary rule for such violations is not required and would only serve to unnecessarily deprive the trier of fact of essential evidence.

In *United States v. McOmber, supra*, the Court of Military Appeals went beyond federal law interpreting the Fifth and Sixth Amendments.[1] It held that once counsel is appointed for a defendant on a case and an investigator desiring to question the de-

1. *United States v. Dowells*, 415 F.2d 801 (9th Cir. 1969); *Coughlan v. United States*, 391 F.2d 371 (9th Cir. 1968).

fendant on that case is "on notice"[2] of the appointment of counsel, the attorney must be notified prior to any questioning of the defendant regardless of whether the defendant, after being advised of his right to counsel, requests the presence of counsel. A few months after deciding *McOmber*, the Court of Military Appeals extended it to cover a situation in which an investigator questioning a suspect without counsel present was aware that the suspect was represented by counsel in a different, but similar and related case. *United States v. Lowry, supra.* Newell contends that *Lowry* controls this case; the Court cannot agree.

*Lowry* was an extension of *McOmber* the Court of Military Appeals thought necessary to prevent "frustration" of the non-waivable right to counsel guaranteed in *McOmber*. Such frustration occurred in *Lowry* due to the related nature of the offenses, (both arson of barracks), and the occurrence of the offenses "within the same general area within a short period of time." *Lowry, supra* at 91–92. The close relationship between the offenses was crucial to the *Lowry* holding because this interrelationship made it inevitable that later interrogation as to one offense would elicit information concerning the other offense on which the defendant was represented by counsel. The inevitability of overlapping interrogation made the Court of Military Appeals unwilling in *Lowry* "to make subtle distinctions" between offenses. *Id.*

■ The distinction between the two offenses involved in this case is far from subtle. There is no similarity or relationship between Newell's unauthorized absence and his alleged arson of a barracks nearly a year later.[3] Accordingly, there was no danger that in questioning Newell concerning the arson information regarding the unauthorized absence would be elicited. *Lowry*, therefore, is factually distinguisha-

ble from this case. Application of *Lowry* here would require a further extension of *McOmber*, with which this court would not agree, and which, in any event, would be improper for a non-military trial court to make.

■ Even were the court to accept the factual applicability of *Lowry* to this case and find a violation of military law, the court would reject defendant's contention that suppression of statements in the federal district court is a required or necessary sanction for such violations of military law. Admittedly, there is impressive case support for the broad proposition that federal agencies, including the military, must comply with their own laws, rules, and regulations and that it is proper for a federal district court to command compliance, and, *if necessary,* impose sanctions for noncompliance. *United States v. Sourapas,* 515 F.2d 295 (9th Cir. 1975); *Antonuk v. United States,* 445 F.2d 592 (6th Cir. 1971); *United States v. Leahey,* 434 F.2d 7 (1st Cir. 1970); *Dellaverson v. Laird,* 351 F.Supp. 134 (S.D. Cal.1972). However, support for requiring agencies and the military to adhere to their own regulations does not necessarily mean that imposition of an exclusionary sanction for failure to comply is required or necessary.

Recently the Supreme Court has given abundant notice that the era of free-wheeling expansion of exclusionary rules which serve to keep important, reliable evidence from the trier of fact is over. "Certainly, inflexible rules of exclusion that may frustrate rather than promote justice, have not been viewed recently by this Court with unlimited enthusiasm." *Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 2252, 53 L.Ed.2d 140 (1977), *citing, Brewer v. Williams,* 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977) and *United States v. Janis,* 428 U.S. 433, 96 S.Ct. 3021, 49

---

**2.** The court recognizes the ambiguity of this term, but finds it unnecessary to decide if constructive knowledge puts an agent "on notice" in light of the other grounds relied on for the denial of defendant's motion.

**3.** Of course, the unauthorized absence is related to the arson in the sense that but for the unauthorized absence charge the defendant would not have been in the time and place to commit the arson. The court attaches no legal significance to such metaphysical relationships.

L.Ed.2d 1046 (1976). *See also United States v. Calandra*, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974) (holding the exclusionary rule of the 4th Amendment inapplicable to Grand Jury proceedings). It is true that in *United States v. Leahey, supra,* and *United States v. Sourapas, supra* an exclusionary sanction forbidding government use of statements was imposed for the failure of the IRS to comply with its internal regulations relating to the content of the warning to be given interviewees suspected of criminal tax violations. But the *Leahey* court expressed some reluctance in reaching its decision to impose an exclusionary sanction and only did so as a last resort means of creating an incentive for the IRS to comply with its own regulations. In *Sourapas, supra,* the Ninth Circuit, with no independent analysis or discussion of the issue, affirmed a district court's decision to suppress on the basis of *Leahey.*

█ The exclusionary rule for statements adopted in *McOmber* and *Lowry* was based on military statutes and not constitutional considerations, thus, its *raison d' etre* is to coerce compliance rather than provide a constitutionally mandated remedy.[4] If adoption of an exclusionary sanction is not constitutionally required and will not serve this deterrent purpose in a given situation, it should not be adopted because to do so will unnecessarily hinder the truth finding process.

In this case the statements taken from the defendant were taken by military personnel and intended for use in military proceedings which would be controlled by military rules and regulations. The naval agents conducting the questioning could not have foreseen the circumstance that Newell would be able to successfully challenge military jurisdiction and thereby force the case into federal court. Attributing such foresight to them would be obviously unrealistic, but it is only by such an attribution of foresight that it would make any sense to impose an exclusionary rule for failure to abide by military rules and case law in federal district court cases. Only if military personnel consider the possibility of a case winding up in federal court, rather than a military court, will such personnel be deterred by an exclusionary rule in this court for violations of military regulations and case law. Since it is obvious such a possibility is too remote to be taken into consideration, it follows that an exclusionary rule in the federal courts for violations of military regulations and case law will not serve a deterrent function and should not be adopted.

█ As a secondary ground for the suppression of his incriminatory statements, the defendant claims that the *Miranda/Tempia* warnings he was given were deficient in one respect—he was not warned that any statements he made could be used in a criminal trial held in a civilian court, but only that they could be used against him at a court-martial. This contention is an excellent example of placing form over substance. The purpose of informing a suspect that any statements he makes can be used against him at a court-martial or a criminal trial in the federal court is to inform him of his 5th Amendment right against self-incrimination and of the possible serious consequences should he waive that right. Since a court-martial and a federal criminal trial are consequences of equivalent seriousness, this purpose is served as equally by a warning that the statements may be used at a court-martial as it is by a warning that the statements may be used at a federal criminal trial. The purpose of *Miranda* having been served, there is no need to suppress valuable and reliable statements to enforce *Miranda.*

---

4. Although the court in *McOmber* spoke of statements taken without notification of counsel as "involuntary", the opinion makes clear that it did not consider such statements involuntary in the constitutional sense, but only as "involuntary under Article 31(d) of the Uniform Code." *McOmber, supra,* at 24 C.M.A. 209, at 51 C.M.R. 454, at 1 M.J. 383. Thus, exclusion of Newell's statements, assuming a violation of *McOmber* and *Lowry* is not constitutionally mandated. *Compare Brulay v. United States,* 383 F.2d 345 (9th Cir.), *cert. denied,* 389 U.S. 986, 88 S.Ct. 469, 19 L.Ed.2d 478 (1967).

Accordingly, IT IS ORDERED that the motion to suppress statements is denied.