UNITED STATES of America,
Plaintiff-Appellee,

v.

Stephen Ray NEWELL,
Defendant-Appellant.

No. 77–3685.

United States Court of Appeals,
Ninth Circuit.

July 19, 1978.

Frank M. Murphy, III (argued), San Diego, Cal., for defendant-appellant.

Stephen V. Petix, Asst. U. S. Atty., on the brief, Michael H. Walsh, U. S. Atty., Stephen V. Petix, Asst. U. S. Atty. (argued), San Diego, Cal., for plaintiff-appellee.

Before BARNES and KENNEDY, Circuit Judges, and BARTELS,* District Judge.

BARTELS, District Judge:

Stephen Ray Newell was tried without a jury before Judge Gordon Thompson, Jr. in the Southern District of California and convicted of arson and destruction of government property in violation of 18 U.S.C. §§ 81 and 1361. The trial took place upon stipulated facts after the court denied Newell's motion to suppress certain statements obtained from him by military investigators. *United States v. Newell,* 442 F.Supp. 668 (S.D.Cal.1977). On November 7, 1977, Newell was sentenced pursuant to 18 U.S.C. § 4205(b) to the maximum term allowed by law, from which he now appeals. We affirm.

I

On September 20, 1974, Newell enlisted in the United States Navy and was ultimately assigned to serve aboard the U.S.S. Kitty Hawk, an aircraft carrier home-ported at San Diego, California. One and one-half years later, on March 6, 1976, Newell be-

* The Honorable John R. Bartels, Senior United States District Judge, Eastern District of New York, sitting by designation.

came an unauthorized absentee, and on March 9, 1976, he was arrested by the San Diego police on unrelated charges. Newell escaped from prison while serving a sentence on one of these charges, but was rearrested on June 23, 1976, and was eventually returned to military custody and placed in military confinement on December 24, 1976, 293 days after his original unauthorized absence. He was released from military confinement on December 27, 1976.

At approximately two o'clock in the early morning hours of January 1, 1977, a fire broke out in a breezeway area of Building 57 on the United States Naval Station, portions of which were being used at the time to house naval personnel. The building was evacuated and the blaze extinguished by the fire department after causing damage to the building and its contents in excess of $30,000. Newell had been seen in the Master-at-Arms office of Building 57 about ten minutes prior to discovery of the fire, when he joined in a game of cards with other naval personnel. On January 3, 1977, agents of the Naval Investigative Service (NIS) interviewed the inhabitants of Building 57, including Newell, whom they identified as a potential witness in their investigation of the fire.

The following day, Lt. Richard Bloxom was appointed to represent Newell before a special court martial relative to his unauthorized absence from March 3, 1976 to December 25, 1976. Lt. Bloxom saw Newell for the first time on January 13, 1977, and again on January 20, 1977. On January 14, 1977, the day after Lt. Bloxom first met with Newell, NIS agent Dempsey reinterviewed Newell. During this interview, agent Dempsey began to view Newell as a suspect in the arson, and thereupon gave Newell the warnings mandated by *United States v. Tempia,* 16 C.M.A. 629, 37 C.M.R. 249 (1967), the military equivalent of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Newell executed a written waiver of rights form and answered in the negative to agent Dempsey's specific question whether he wanted an attorney. Newell did not mention his

representation by Lt. Bloxom on the unauthorized absence charges, and no notice of the interrogation was given to Lt. Bloxom. The interview continued for about an hour and was terminated when Newell stated that he would like to speak with a Salvation Army chaplain before continuing further. After purportedly making a call to the chaplain, Newell left the NIS office.

Sometime later, agent Dempsey sought out Newell at his barracks and was informed by Newell that he had not seen the chaplain but that he wanted to speak with the agent anyway. Agent Dempsey readvised Newell of his rights and obtained a written waiver from him, who again stated that he did not want a lawyer. Newell thereupon made a statement which was transcribed and sworn to, implicating a third person in the arson. Newell made no mention of this interview when he met with Lt. Bloxom on January 20, 1977, one week later.

On January 30, 1977, Newell once again became an unauthorized absentee, but on February 17, 1977, he was rearrested by agent Dempsey and placed in confinement. He then spontaneously requested a polygraph test with respect to the Building 57 fire, but one could not be arranged until February 22, 1977. On that day Newell was not only given the standard advice of rights pursuant to *Miranda-Tempia* but was also advised of his rights with respect to polygraph examinations. He executed written acknowledgments and waivers with respect to both sets of rights, and gave a negative answer to the question whether he felt he wanted or needed a lawyer. He made an oral statement to the polygraph operator, agent Naylor, that he had accidentally started the fire, and signed a written statement to the same effect for agent Dempsey, who readvised him of his rights and obtained a waiver from him before obtaining the statement. Newell again denied that he wished a lawyer.

There is no evidence that agent Naylor actually knew of the appointment of counsel to represent Newell on the unauthorized

absence charge, but the district court found that agent Dempsey was aware of sufficient circumstances to have had constructive knowledge of the appointment of Lt. Bloxom by February 22, 1977. Nonetheless, no prior notice of the interrogation was given to counsel. It was not until March 3, 1977, when another NIS agent who desired to question Newell with respect to a different arson asked if Newell was in fact represented by counsel that Newell stated he was.

In March 1977, Newell was tried before a general court-martial on two counts of unauthorized absence, one count of arson and one count of destruction of government property. These charges were dismissed by the military court for lack of jurisdiction over the person because of misconduct by the Navy recruiter who enlisted Newell. Thereafter, on June 27, 1977, the arson case was turned over to federal civilian authorities for trial in the Southern District of California, and the above conviction resulted.

## II

This appeal raises the question whether military statutory and case law relative to the suppression of evidence in court-martial proceedings applies to the facts of this case and, if so, whether such military law requires suppression of evidence in federal criminal proceedings. Newell contends that his statements concerning the arson should have been suppressed by the district court because they were taken by the NIS agents in violation of Articles 27 and 31(d) of the Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 827, 831(d),[1] as construed by the Court of Military Appeals in *United States v. McOmber,* 24 C.M.A. 207, 51 C.M.R. 452, 1 M.J. 380 (1976), and *United States v. Lowry,* 25 C.M.A. 85, 54 C.M.R. 85, 2 M.J. 55 (1976), as well as in violation of paragraphs 6a and 44h of the Manual for Courts-Martial, United States, 1969 (rev.).[2]

1. Article 27(a) of the Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 827(a), reads as follows:

    (a) For each general and special court-martial the authority convening the court shall detail trial counsel and defense counsel, and such assistants as he considers appropriate. No person who has acted as investigating officer, military judge, or court member in any case may act later as trial counsel, assistant trial counsel, or, unless expressly requested by the accused, as defense counsel or assistant defense counsel in the same case. No person who has acted for the prosecution may act later in the same case for the defense, nor may any person who has acted for the defense act later in the same case for the prosecution.

    Article 31 of the UCMJ, 10 U.S.C. § 831, reads as follows:

    (a) No person subject to this chapter may compel any person to incriminate himself or to answer any question the answer to which may tend to incriminate him.

    (b) No person subject to this chapter may interrogate, or request any statement from, an accused or a person suspected of an offense without first informing him of the nature of the accusation and advising him that he does not have to make any statement regarding the offense of which he is accused or suspected and that any statement made by him may be used as evidence against him in a trial by court-martial.

    (c) No person subject to this chapter may compel any person to make a statement or produce evidence before any military tribunal if the statement or evidence is not material to the issue and may tend to degrade him.

    (d) No statement obtained from any person in violation of this article, or through the use of coercion, unlawful influence, or unlawful inducement may be received in evidence against him in a trial by court-martial.

2. Paragraph 6a of the Manual for Courts-Martial, United States, 1969 (rev.), reads as follows:

    a. *General.* For each general and special court-martial the authority convening the court shall detail a trial counsel and a defense counsel, together with such assistants as he deems necessary or appropriate. Detailed counsel shall be commissioned officers. An accused may, however, be represented by individual counsel (48a, b ). No person who has acted as investigating officer, military judge, or court member in a case may act later as trial counsel, assistant trial counsel, or, unless expressly requested by the accused (61f(4); app. 8a ), as defense counsel or assistant defense counsel in the same case. No person who has acted for the prosecution may act later in the same case for the defense, nor may any person who has acted for the defense act later for the prosecution (Art. 27(a)). In the absence of evidence to the contrary, a person who, between the time the case has been referred for trial and the trial, has been a detailed counsel or assistant coun-

*McOmber* and *Lowry, supra,* upon which Newell places principal reliance, hold that all statements taken from an accused by military investigative agents in the absence of counsel must be excluded from court-martial proceedings where the agent is on notice that the accused is represented by counsel, even if counsel was only appointed in a related case, and not the case under investigation. In *McOmber,* the accused was suspected of the theft of a tape deck. Upon being warned of his rights, he requested counsel, and the interview was terminated. Two months after counsel for the accused had contacted the agent, the agent again interviewed the accused about nine related larcenies, including the tape deck theft. Before the interview the agent re-warned the accused of his *Miranda-Tempia* rights, which were waived. However, the agent did not contact the accused's counsel prior to the interview and counsel was not present.

The court in *McOmber* recognized the constitutional overtones of the case, but disposed of the motion to suppress on statutory grounds, avoiding any resolution of the Sixth Amendment claims presented. On the basis of UCMJ Arts. 27 and 31(d), it held that

> once an investigator is on notice that an attorney has undertaken to represent an individual in a military criminal investigation, further questioning of the accused without affording counsel reasonable opportunity to be present renders any statement obtained involuntary under Article 31(d) of the Uniform Code.

24 C.M.A. at 209, 51 C.M.R. at 454, 1 N.J. at 383.

*McOmber* was followed shortly after by *Lowry, supra,* where the accused, prior to interrogation on April 1, 1974, was warned that he was a suspect in the arson of barracks 238 and advised of his rights under *Miranda-Tempia.* The suspect requested counsel and the interview was terminated. On April 19, 1974, the military investigators again interviewed Lowry, warning him this time that he was suspected of the arson of barracks 230, and of the use of marijuana. The agents advised Lowry of his *Miranda-Tempia* rights and also informed him that they were aware that he had military counsel in connection with the barracks 238 ar-

sel of the court to which the case has been referred, shall be deemed to have acted as a member of the prosecution or the defense, as the case may be. A person who has acted for the accused at a pretrial investigation or other proceedings involving the same general matter is ineligible to act thereafter for the prosecution. An accuser, unless expressly requested by the accused (61*f*(4); app. 8*a*), may not act as defense counsel or assistant defense counsel in the same case.

The power to detail under Article 27 cannot be delegated.

The convening authority may, with the concurrence of the appropriate commanding officer, detail as trial counsel or as assistant counsel of general and special courts-martial any qualified officer *regardless of the armed force* of which that officer is a member.

Paragraph 44h of the Manual for Courts-Martial reads as follows:

h. Relations with the accused and his counsel. Except to the extent that this manual may otherwise require, it is not his [i. e., trial counsel's] duty to assist or advise the defense.

Immediately upon receipt of charges referred to him for trial, he will serve a copy of the charge sheet, as received and corrected by him, on the accused and will inform the defense counsel that the copy has been so served. Except as otherwise directed by the convening authority (see, for example, 151*b* (1) and (3)), he will permit the defense to examine from time to time any paper accompanying the charges, including the report of investigation and papers sent with the charges on a rehearing. He will also permit the defense to examine from time to time the order convening the court and all amending orders. Before trial, he should advise the defense of the probable witnesses to be called by the prosecution, and the fact that the defense has not been so advised with respect to a witness who appears at the trial may be a ground for a continuance.

His dealings with the defense should be through any counsel the accused may have. Thus, if he desires to know how the accused intends to plead or whether an enlisted accused desires enlisted members on the court, he will ask the regularly detailed defense counsel or other counsel, if any, of the accused. He will not attempt to induce a plea of guilty.

The trial counsel will furnish every person tried by the court a copy of the record of the proceedings as soon as it is authenticated. In this connection, see 82*g*(1) (Disposition—Delivery to accused).

son, but that they wished to interrogate him concerning only the barracks 230 arson and his use of marijuana. Lowry did not request the assistance of counsel and his previously appointed counsel was never informed of this interview.

The Court of Military Appeals held that the failure of the agents to inform appellant's previously appointed counsel of the April 19 interview rendered Lowry's pretrial statement involuntary as to the arson of barracks 230. The court stated that even though counsel had been appointed on a different arson charge, "we are unwilling to make subtle distinctions that require the separation of offenses occurring within the same general area within a short period of time." 25 C.M.A. at 91, 54 C.M.R. at 91, 2 N.J. at 59. It again pointed out that its decision in *Lowry,* as in *McOmber,* was predicated on an accused's right to counsel under Art. 27 of the UCMJ, and not on the Sixth Amendment. ·

### III

Court-martial proceedings against Newell having been dismissed for lack of jurisdiction, no military court has had occasion to decide his motion to suppress. Consequently there has been no determination by a military court that upon the facts of this case, Newell's rights have been violated. In fact, our examination of *McOmber* and *Lowry* leads us to believe that these cases are easily distinguished from the present facts and that Newell has failed to show a violation of his Article 27 rights.

In *McOmber* the military agent questioned the accused about a series of related thefts, including the very theft for which he knew counsel had been appointed to represent the accused. In *Lowry* the accused terminated his initial interview with a demand for counsel, and the close relationship of the second arson offense made it inevitable that the interrogation as to the second similar offense would throw light upon the first. Here there was no demand for counsel and there was no similarity between the two offenses. It is highly unlikely that questioning of Newell concerning the arson charge would elicit any information with respect to the unauthorized absence. While the language of *Lowry* with respect to "offenses occurring within the same general area within a short period of time" appears broad enough on its face to include entirely dissimilar and unrelated offenses, the facts of *Lowry* do not support such an expansive interpretation.

In this case, the NIS agents investigating the arson conscientiously asked Newell if he wished to have an attorney, but they did not ask him if he already had an attorney. Newell contends that *McOmber* and *Lowry* have no vitality unless an investigator is required to make this latter inquiry. However, there is nothing in *McOmber* and *Lowry* which obliges military agents to add this question to the litany of advice they must give a suspect, and it is not for this court to read such a requirement into the cases and laws of another jurisdiction. *See Schlesinger v. Councilman,* 420 U.S. 738, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975). It is our opinion that none of Newell's rights under military law to the effective assistance of counsel was violated by the manner in which he was interrogated by the NIS agents.

### IV

Assuming that *McOmber* and *Lowry* apply to Newell's facts, it does not follow that this court is in any way obligated to apply the exclusionary rules of these cases in federal criminal proceedings. "Military law, like state law, is a jurisprudence which exists separate and apart from the law which governs in our federal judicial establishment." *Burns v. Wilson,* 346 U.S. 137, 140, 73 S.Ct. 1045, 1047, 97 L.Ed. 1508 (1953). *Accord, Schlesinger v. Councilman, supra,* 420 U.S. at 746, 95 S.Ct. 1300. The right to counsel of a person prosecuted in federal court, and remedies for the violation of this right, are controlled by federal civilian law, not by the Uniform Code of Military Justice. Indeed, Articles 27 & 31(d) of the UCMJ are by their terms directed solely to the right to counsel and suppression of evidence in court-marital proceedings, and

do not purport to apply to federal court proceedings. As the Court of Military Appeals recognized in *McOmber,* this circuit has taken a different approach with respect to the assistance of counsel in federal criminal proceedings. In *United States v. Dowells,* 415 F.2d 801 (9th Cir. 1969), statements taken from the accused with respect to one bank robbery were held constitutionally admissible where the accused had waived his *Miranda* rights, even though he had appointed counsel with respect to another bank robbery which had taken place in a different city a week prior to the robbery under investigation. Even stronger is *Coughlan v. United States,* 391 F.2d 371 (9th Cir.), *cert. denied,* 393 U.S. 870, 89 S.Ct. 159, 21 L.Ed.2d 139 (1968), where statements taken from a suspect about the very offense for which the investigators knew he was represented by counsel were also held constitutionally admissible in light of the suspect's waiver of his *Miranda* rights. *See Reinke v. United States,* 405 F.2d 228 (9th Cir. 1968). *See also United States v. Rodriguez-Gastelum,* 569 F.2d 482 (9th Cir.) (en banc), *cert. denied,* —— U.S. ——, 98 S.Ct. 2266, 56 L.Ed.2d 760, (1978) (statements made where interrogation resumed after earlier assertion of right to counsel not necessarily involuntary); *United States v. Pheaster,* 544 F.2d 353 (9th Cir. 1976), *cert. denied,* 429 U.S. 1099, 97 S.Ct. 1118, 51 L.Ed.2d 546 (1977) (*semble*). *Cf. Michigan v. Mosley,* 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975) (resumption of interrogation after assertion of right to silence). These cases demonstrate that Newell's constitutional right to the assistance of counsel in federal court has not been violated.

Newell concededly seeks application of the exclusionary rule to his statements not because they were taken in violation of his constitutional rights but because they were taken in violation of his right under military law and regulations to the assistance of counsel in court-martial proceedings. However, "the exclusionary rule is a remedy which is integrally bound up with constitutional protections," *United States v. Hall,* 543 F.2d 1229, 1235 (9th Cir. 1976) (en banc), *cert. denied,* 429 U.S. 1075, 97 S.Ct. 814, 50 L.Ed.2d 793 (1977), and "[w]here no constitutional right has been abused, the admissibility of evidence is governed by common law principles, not by local statute.[3] . . . At common law, evidence was admissible regardless of its illegal origins." *United States v. Keen,* 508 F.2d 986, 989 (9th Cir. 1974), *cert. denied,* 421 U.S. 929, 95 S.Ct. 1655, 44 L.Ed.2d 86 (1975). *Accord, United States v. Testa,* 548 F.2d 847 (9th Cir. 1977); *United States v. Hall, supra.* *See United States v. Scolnick,* 392 F.2d 320 (3d Cir.), *cert. denied,* 392 U.S. 931, 88 S.Ct. 2283, 20 L.Ed.2d 1389 (1968). *Compare Alderman v. United States,* 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969) (limiting standing under Fourth Amendment in federal courts) *with Kaplan v. Superior Court,* 6 Cal.3d 150, 98 Cal.Rptr. 649, 491 P.2d 1 (1971), *app. dismissed,* 407 U.S. 917, 92 S.Ct. 2452, 32 L.Ed.2d 803 (1972) (general standing to object to illegally seized evidence in California courts). The right of a military suspect to the assistance of counsel during interrogation by military investigative agents is not mandated by the constitution but by judicial construction of a statute of limited or local application. *See Burns v. Wilson, supra; United States v. Keen, supra.* The exclusion of Newell's statements in federal criminal proceedings is thus neither necessary nor appropriate to safeguard this right.

### V

As the preceding discussion points out, there is a close analogy between the judicial establishment of the military and the judicial establishment of a separate sovereign, such as the state of California. However, it would be misleading to view the military justice system solely in terms of this analo-

---

**3.** This statement is perhaps too broad, since the Supreme Court has recognized or developed exclusionary rules in a number of areas where evidence was obtained not only in viola- tion of an accused's rights under the constitution, but also under federal statutes or federal rules of procedure. *United States v. Blue,* 384 U.S. 251, 86 S.Ct. 1416, 16 L.Ed.2d 510 (1966).

gy, for the military is also an agency of the federal government. It is on this latter aspect of the military that Newell focuses.

■ One of Newell's principal arguments is based on the authorities holding that federal courts will require federal agencies to abide by the agency's own regulations, even where the regulations are more generous than required by law. *See, e. g., Vitarelli v. Seaton,* 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959) (Department of the Interior); *Service v. Dulles,* 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957) (State Department); *Accardi v. Shaughnessy,* 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954) (Immigration and Naturalization Service); *Ornato v. Hoffman,* 546 F.2d 10 (2d Cir. 1976) (United States Army). The purpose of this rule is to prevent unjust discrimination and denial of adequate notice of procedures by the agency in violation of due process. *See NLRB v. Welcome-American Fertilizer Co.,* 443 F.2d 19 (9th Cir. 1971); *United States v. Heffner,* 420 F.2d 809 (4th Cir. 1969); Note, *Violations by Agencies of their Own Regulations,* 87 Harv.L.Rev. 629 (1974). Newell stresses in particular cases such as *United States v. Sourapas,* 515 F.2d 295 (9th Cir. 1975); *United States v. Leahey,* 434 F.2d 7 (1st Cir. 1970); and *United States v. Heffner, supra,* which hold that statements given to IRS Special Agents by a person not in custody who is suspected of tax fraud must be suppressed in federal court if the Special Agent fails to give the suspect the *Miranda*-type warnings required by IRS procedures but not required by the Fifth Amendment. In *United States v. Caceres,* 545 F.2d 1182 (9th Cir. 1976), *cert. granted,* —— U.S. ——, 98 S.Ct. 2843, 56 L.Ed.2d 784 (1978), this court extended the exclusionary rule of the above cases to eavesdrop evidence obtained by the IRS in violation of IRS procedures not required by the Fourth Amendment. The court read *Sourapas* broadly as holding in general

"that evidence obtained by IRS activity which did not substantially comply with its own regulations must be suppressed." *Id.* at 1187.

■ Newell attempts to bring himself within the scope of these authorities by asserting that paragraphs 6a and 44h of the Manual for Courts-Marital, as well as the judicial decisions of *McOmber* and *Lowry,* are "regulations" which required the NIS agents to contact his counsel before interrogating him about the arson. Assuming these authorities are in the same category as administrative procedures applicable to the interrogation of suspects by investigative agents,[4] we do not believe that their violation requires suppression of Newell's statements in federal court.

In part IV we held that the adoption of the exclusionary rule in the federal court would not serve as an appropriate remedy for any violations of Newell's right to the assistance of counsel in military investigations. The remaining question is whether the adoption of the exclusionary rule in federal courts is necessary under the *Sourapas-Caceres* rationale to deter future noncompliance with UCMJ Art. 27 by military investigators.

These cases and the other IRS cases relied on by Newell deal with the collection of evidence which can be used to obtain a conviction only in federal court. Such an exclusionary rule in the federal courts is a direct deterrent of violations of IRS procedures. On the other hand, as the court below stated, "[i]n this case the statements taken from the defendant were taken by military personnel and intended for use in military proceedings which would be controlled by military rules and regulations." *United States v. Newell, supra,* 442 F.Supp. at 672. This is true with respect to all statements taken in cases involving offenses within the military jurisdiction.

---

4. In fact, *McOmber* and *Lowry* are judicial decisions defining a suspect's statutory right to counsel in the military and setting forth judicial remedies for violation of this right. They are not statements of administrative policy. *Compare Columbia Broadcasting System, Inc. v.*

*United States,* 316 U.S. 407, 418, 62 S.Ct. 1194, 86 L.Ed. 1563 (1942); UCMJ Art. 67(a)(1), (e), 10 U.S.C. §§ 867(a)(1), (e), *with United States v. Heffner,* 420 F.2d 809 (4th Cir. 1969); 1 K. Davis, Administrative Law Treatise § 5.01 (1958).

While an exclusionary rule might have some effect upon deterrence of military investigative agents, its effect would be far more remote than on IRS Special Agents. Cf. United States v. Janis, 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976).

Of course, there will be instances where an investigation begun by military agents will be turned over to federal civilian authorities for further investigation and final adjudication. See generally H. Moyer, Jr., Justice and the Military §§ 1–600 et seq. (1972). In those instances the applicability of the exclusionary rule will depend upon the accommodation of the competing values of deterrence of non-compliance by military investigators with military procedure, and the interest in the truth-finding process in a federal criminal trial. United States v. Leonard, 524 F.2d 1076, 1089 (2d Cir. 1975). In this case, as distinguished from United States v. Caceres, supra, we believe the circumstances require that the balance should be turned in favor of the truth-finding process. "Certainly, inflexible rules of exclusion, that may frustrate rather than promote justice, have not been viewed recently by this Court with unlimited enthusiasm." Manson v. Brathwaite, 432 U.S. 98, 113, 97 S.Ct. 2243, 2252, 53 L.Ed.2d 140 (1976). See also United States v. Caceres, supra. It seems to us that it would unnecessarily hinder the truth-finding process to adopt an exclusionary rule which would be of only remote and questionable deterrent effect on the conduct of military investigators. See United States v. Houltin, 525 F.2d 943, 947 (5th Cir. 1976), vacated in part on other grounds sub nomine Croucher v. United States, 429 U.S. 1034, 97 S.Ct. 725, 50 L.Ed.2d 745 (1977). Cf. Brulay v. United States, 383 F.2d 345 (9th Cir.), cert. denied, 389 U.S. 986, 88 S.Ct. 469, 19 L.Ed.2d 478 (1967). We therefore decline to extend the exclusionary rule of Caceres and Sourapas to the circumstances of this case.

For the reasons given above, we hold that Newell is not entitled to suppression of his statements under either the facts or the law of this case. His judgment of conviction is accordingly affirmed.