UNITED STATES of America,
Plaintiff-Appellee,

v.

Ronald APPOLONEY,
Defendant-Appellant.

Nos. 84–1113, 84–1254.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 11, 1985.

Decided May 6, 1985.

Gregory C. Diamond, Las Vegas, Nev., for plaintiff-appellee.

Lorraine Mansfield, Las Vegas, Nev., for defendant-appellant.

Before WALLACE, HUG, and SKOPIL, Circuit Judges.

WALLACE, Circuit Judge:

Appoloney appeals from his convictions following a jury trial for attempting to evade or defeat taxes in violation of 26 U.S.C. § 7201 and for failing to file a wagering tax return in violation of 26 U.S.C. § 7203. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

I

Appoloney was suspected of conducting a wagering operation from two telephone numbers on the basis of information provided by an informant. The wagering involved principally football bets during the months of October and November of 1980. In October, the Internal Revenue Service (IRS) obtained a court order permitting the installation of pen registers on Appoloney's two telephones. During an approximately six-week period, these registers recorded some 6,800 calls. Near the end of November, the IRS obtained and executed a search warrant for Appoloney's residence. At the commencement of the search, IRS Special Agent Gerardi showed Appoloney the search warrant and gave him a *Miranda* warning. Appoloney stated that he wished to speak with Gerardi, and made several admissions that he was operating a wagering operation. During the search, Special Agent King answered Appoloney's telephones to take bets; these conversations were recorded. As a result of the search, the agents seized numerous items, including papers and materials related to sporting wagers.

Appoloney was charged with accepting wagers and not paying either the two percent (2%) excise tax on wagers, 26 U.S.C. § 4401(a)(2), or the $500 annual tax required of persons employed in accepting wagers. *Id.* § 4411. He also allegedly failed to file Form 730 (Tax on Wagering) and Form 11–C (Special Tax Return and

Application for Registry-Wagering). He pleaded not guilty and thereafter filed numerous pretrial motions.

## II

Appoloney alleges that the following comment by the district judge at the beginning of the trial substantially prejudiced the trial by erroneously indicating to the jury that a defendant is not presumed innocent:

He has been charged with these counts, and to these charges he has entered a plea of not guilty. That puts in issue every material allegation. The mere fact that he has been charged is not evidence of guilt. The fact that he has entered a plea of not guilty doesn't mean he is innocent, *so we start off with a standoff.*

(Emphasis added).

 Instructions to the jury must be viewed in the context of the whole trial. *United States v. Rohrer*, 708 F.2d 429, 431 (9th Cir.1983). Because no objection was raised at trial, reversal would only be warranted for plain error which resulted in substantial prejudice. *See* Fed.R.Crim.P. 52(b); *United States v. Hall*, 650 F.2d 994, 998 (9th Cir.1981) (per curiam). Appoloney contends that this comment somehow "poisoned" the jury, despite the district judge's clearly correct instructions at the end of the trial. Viewing the trial as a whole, this comment alone did not substantially affect the outcome of the trial to Appoloney's detriment. The "standoff" mentioned referred only to the pleadings. Any prejudice was dissipated entirely by the court's later instructions.

## III

 Appoloney argues that Special Agent Gerardi deceived him as to the nature of the investigation by failing to follow IRS procedures outlined in two IRS press releases, IR–949, 1968 Stand.Fed.Tax Rep. (CCH) ¶ 6946 (Nov. 26, 1968), and IR–897, 1967 Stand.Fed.Tax Rep. (CCH) ¶ 6832 (Oct. 3, 1967). These releases require a Special Agent, at the initial meeting

with a taxpayer, to (1) identify himself as a Special Agent, (2) inform the taxpayer that he is conducting a criminal investigation, and (3) advise the taxpayer of his *Miranda* rights. *See United States v. Sourapas*, 515 F.2d 295, 297–98 & n. 2 (9th Cir.1975) (*Sourapas* ). Appoloney argues that unless the Agent substantially complies with this procedure, the fruits of his investigation must be suppressed. *See id.* at 298.

In *United States v. Caceres*, 545 F.2d 1182, 1187 (9th Cir.1976), we read *Sourapas* as holding "that evidence obtained by IRS activity which d[oes] not substantially comply with its own regulations must be suppressed." Although we stated that we were "bound to follow" *Sourapas*, thereby reversing a trial court's refusal to suppress evidence obtained as the result of a violation of IRS regulations concerning electronic surveillance, we recognized that "the suppression of evidence because of noncompliance with an administrative regulation only, without any showing of statutory or constitutional violation, may be a questionable approach." *Id.* (footnote omitted). The Supreme Court agreed by reversing *Caceres*, 440 U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979). Framing the issue as "whether evidence obtained in violation of Internal Revenue Service (IRS) regulations may be admitted at the criminal trial of a taxpayer," *id.* at 743, 99 S.Ct. at 1467, the Court held that absent any constitutional or statutory violation, the exclusionary rule was inapplicable. *Id.* at 754–55, 99 S.Ct. at 1472–73. Thus, the continuing validity of our holding in *Sourapas* is questionable. *See, e.g., United States v. Nuth*, 605 F.2d 229, 233–34 (6th Cir.1979) (rejecting *Sourapas* in light of *Caceres* ). Subsequently, we have held that "[a]bsent unusual circumstances, the exclusionary rule does not apply when IRS agents violate internal regulations, without also infringing on constitutional or statutory rights." *United States v. Snowadzki*, 723 F.2d 1427, 1430–31 (9th Cir.) (citing *Caceres* ), *cert. denied,* —— U.S. ——, 105 S.Ct. 140, 83 L.Ed.2d 80 (1984). We need not determine whether this is one of those "unusual circumstanc-

es," however, because the IRS substantially complied with its regulations.

Appoloney concedes that prior to commencing the search, Gerardi informed him of his *Miranda* rights, but asserts that he was deceived into thinking that Gerardi was only investigating state wagering violations (which are misdemeanors) rather than felony counts under the federal tax laws. Appoloney claims that providing him with a copy of the search warrant failed to comply substantially with the notice required by the IRS procedures. Appoloney relies on *United States v. Tweel*, 550 F.2d 297 (5th Cir.1977), and *United States v. Prudden*, 424 F.2d 1021 (5th Cir.), *cert. denied*, 400 U.S. 831, 91 S.Ct. 62, 27 L.Ed.2d 62 (1970), in support of his claim. *Tweel*, however, held that the burden was on the defendant to show deception, 550 F.2d at 299, and *Prudden* observed that giving a *Miranda* warning defeats any claim of deception. *See* 424 F.2d at 1032. Appoloney made no showing of deception.

Gerardi served a search warrant on Appoloney, in which the preamble clearly states that a Special Agent was conducting a criminal tax investigation prior to commencing the search and questioning. Appoloney was on notice that a criminal investigation was underway, thereby substantially complying with the IRS procedures.

## IV

■ Appoloney relies on *Grosso v. United States*, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968) (*Grosso* ), and *Marchetti v. United States*, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968) (*Marchetti* ), in contending that he cannot be prosecuted for failing to file a wagering tax return because filing such a return would put him at the risk of incriminating himself with respect to state gambling law violations. Those cases held that a requirement of filing a wagering tax return violated a taxpayer's fifth amendment rights. *See Grosso*, 390 U.S. at 66–67, 88 S.Ct. at 712–13; *Marchetti*, 390 U.S. at 48–49, 88 S.Ct. at 702–03. The Court, however, was principally concerned with the sharing of information garnered on such returns with other law enforcement agencies. *See Grosso*, 390 U.S. at 66, 88 S.Ct. at 712; *Marchetti*, 390 U.S. at 48, 88 S.Ct. at 702. Congress subsequently enacted a statute to resolve the concerns raised by these two cases. *See* H.R.Conf.Rep. No. 1401, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Ad.News 6232, 6233. Under new 26 U.S.C. § 4424, the IRS may not disclose information on such a return to other law enforcement officials, subject to criminal sanctions under 26 U.S.C. § 7213(a)(1).

The validity of the filing requirements in light of these new provisions is an issue of first impression in this circuit. Other circuits, however, have uniformly upheld them against attacks based on *Grosso* and *Marchetti*. *See United States v. Jeffers*, 621 F.2d 221, 226 (5th Cir.1980); *United States v. Stavros*, 597 F.2d 108, 114 (7th Cir.1979); *United States v. Sahadi*, 555 F.2d 23, 27 (2d Cir.1977). Appoloney recognizes that in order to invalidate a filing requirement on fifth amendment grounds under *Marchetti*, the person compelled to file must face a substantial hazard of incrimination as a result of the filing.

We find no basis for creating a conflict among the circuits over the validity of these filing requirements. The statute's provisions proscribing any disclosure of the information on such a return, together with the criminal sanctions for violations, adequately address *Marchetti*'s concerns by substantially attenuating the risk of any disclosure to other law enforcement agencies. Although Appoloney asserts that other law enforcement officials were involved in this case, the government properly points out that these other officials, rather than receiving information from the IRS in violation of section 4424, only provided information to the IRS on Appoloney's activities. Thus, there was no violation of section 4424.

## V

■ Appoloney claims that he was never permitted to hear recordings of Agent King's conversations with persons calling

Appoloney's telephone numbers during the search. Recording the conversations during the execution of the search was plainly permissible. *See United States v. Gallo,* 659 F.2d 110, 113–14 (9th Cir.1981). *Gallo* involved a situation identical to the one before us.

■ Appoloney moved to suppress the recordings, but he never filed any motion to discover their contents. The record nevertheless indicates that he was provided with a transcription and that he was permitted to hear the recordings during the trial outside the presence of the jury. Subsequently, the government decided not to present the recordings in evidence and instead relied on Agent King's testimony. As a result, Appoloney has failed to make any showing of prejudice.

## VI

■ Appoloney relies on *United States v. Cardwell,* 680 F.2d 75 (9th Cir.1982) (*Cardwell*), for his contention that the search warrant was invalid because it failed to specify which items could be seized, and instead permitted a general search. He asserts that the designation of such items as "betting slips" required the IRS agents to make legal distinctions while examining slips of paper in his residence, thus providing them with unwarranted discretion in determining which items to seize contrary to *Cardwell. See id.* at 78.

*Cardwell,* however, is distinguishable. In that case, the IRS obtained a warrant to seize all the books and records of a corporation which may have been the fruits of violations of the tax code, *id.* at 76, despite the fact that the IRS had recently reviewed the corporation's books and knew specifically which books it required in its criminal investigation. *See id.* at 78. The extent of the government's advance knowledge was critical to our holding. Although Appoloney contends that the IRS also knew in this case which records to seize, he provides no support for this assertion.

*Cardwell* explicitly recognized that a more general warrant would be permissible when there was limited information available to authorities, and that the validity of the warrant must be determined under the totality of the circumstances. *See id.* The warrant here is more closely analogous to the portions of a warrant upheld in *United States v. Gomez-Soto,* 723 F.2d 649, 652–54 (9th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 2360, 80 L.Ed.2d 831 (1984), which authorized the seizure of numerous documentary items. Moreover, we have previously cited with approval a Fourth Circuit case upholding a search warrant similar to the one at issue here because more specificity would have been impossible. *See United States v. Gallo,* 659 F.2d 110, 113–14 (9th Cir.1981), *quoting United States v. Fuller,* 441 F.2d 755, 760 (4th Cir.), *cert. denied,* 404 U.S. 830, 92 S.Ct. 74, 30 L.Ed.2d 59 (1971) (*Fuller*).

In *Fuller,* the Fourth Circuit reviewed a warrant that authorized the seizure of

> bookmaking records and wagering paraphernalia consisting of, but not limited to, accounting sheets, rundown sheets, betting slips, recap sheets, sports information papers, miscellaneous line notations, line sheets, books of account, checks, money orders, and United States Currency ....

441 F.2d at 760. In upholding the validity of the warrant, the court emphasized that "[t]he description is necessarily general and clearly contemplates [the seizure of] material relating to gambling activity." *Id.* Here, the warrant authorized the seizure of "wagering paraphernalia" such as betting slips, bottom sheets and owe sheets, and journals and schedules of sporting events, which clearly are directly related to gambling activity. We find the reasoning of *Fuller* to be persuasive. The warrant here was no more "general" than what was necessarily required under the circumstances, namely, an investigation of bookmaking activities. Such an investigation would of necessity require the seizure of betting slips, since they constitute the most relevant evidence of the crime involved.

## VII

 Appoloney argues that the jury was prejudiced by a local newspaper article on the trial, citing *Sheppard v. Maxwell*, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966). In *Sheppard*, however, there was evidence that the entire jury had been exposed to press reports on the trial, and that press coverage had been very intense. *Id.* at 345, 86 S.Ct. at 1513. Here, Appoloney asserts that the jury was "filled with prejudice" because the newspaper article "could not help but be noticed by the jury." The record, however, indicates that Appoloney's attorney had not read the newspaper article when he voiced his complaint to the district judge. The court asked whether any jurors had seen it and no member of the jury indicated having read the article. Appoloney fails to put forth a scintilla of evidence that any juror had actually taken notice of the press coverage. His argument is frivolous.

## VIII

Finally, Appoloney asserts that his attorney's failure to put forth any defense to the charges after the government rested its case indicates that he was deprived of adequate representation. Essentially, he argues that his attorney should have found witnesses and evidence to exculpate him. Although he maintains that a defense was available, he never suggests what that defense might have been. He also assumes that witnesses or evidence could have been found.

A criminal defendant has a right to the effective assistance of counsel. In *Strickland v. Washington*, —— U.S. ——, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), the Supreme Court established a two-stage inquiry. First, the defendant must show that the representation was deficient. *Id.* Second, he must show prejudice as a result of that deficiency. *Id.* Moreover, courts are admonished not to "second-guess" trial strategy. *Id.* 104 S.Ct. at 2065.

 Here, Appoloney's allegations that defense counsel was inadequate rest on pure speculation. Although counsel did fail to raise objections on some issues, he raised objections to others and filed numerous motions prior to trial to protect Appoloney's position. *Strickland* requires a showing that the outcome would have differed if other counsel had been employed; the focus is on whether the overall result was just. *See id.* at 2068. Appoloney makes no showing of injustice here.

 Moreover, the court must defer to counsel's strategic decisions and view the situation from counsel's perspective. *See id.* at 2065–66. A decision not to put forth a defense may be a conscious strategic option. Viewing "the totality of the evidence," *id.* at 2069, the case against Appoloney was overwhelming, especially considering his own admissions prior to engaging counsel. His assertion that he was deprived of adequate representation is without merit.

AFFIRMED.