**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**James B. CARDWELL,
Defendant-Appellant.**

**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Marvin MARTIN, Defendant-Appellant.**

**Nos. 81–1336X, 81–1337X.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 7, 1982.

Decided June 23, 1982.

Earl E. Boyd, Stilz, Boyd, Levine & Handzlik, Los Angeles, Cal., Edward O. C. Ord, San Francisco, Cal., for defendant-appellant Martin.

Katherine M. Quadros, Asst. U. S. Atty., Los Angeles, Cal., for the U. S.

Before WRIGHT and SNEED, Circuit Judges, and EAST *, District Judge.

SNEED, Circuit Judge:

Cardwell was convicted of aiding in preparation of a false corporate tax return, his codefendant Martin was convicted of willfully subscribing to a false corporate tax return, and both were convicted of conspiracy. After a bench trial, each was sentenced to twenty-five weekends in jail, 2000 hours charitable service, and five years probation. This appeal followed. We reverse the convictions on the ground that the search warrant executed by the Internal Revenue Service (IRS) during its investigation did not satisfy the particularity requirement of the Fourth Amendment, but rather authorized an unlawful general search of the appellants' business premises.

## I.

### FACTUAL BACKGROUND

An employee of Midwest Growers Cooperative Corp. (Midwest) notified the IRS that Midwest and other related corporations were incorrectly reporting income on corporate tax returns. According to the informant, the appellants, who were in apparent control of the corporations, had diverted some of the companies' income to themselves and not reported it on the corporate tax returns, and had caused checks to be issued for nonexistent services, which were deducted as business expenses. Based on this information, the IRS labelled Midwest's file as a possible fraud case and referred it to IRS Revenue Agent Sharon Rivard who conducted an on-site audit of Midwest's 1974 and 1975 taxable years. Midwest and its employees cooperated fully in the audit, allowing Agent Rivard full access to its records, some of which were incriminating, over a period of approximately one month. During the audit, Agent Rivard concentrated particularly on the accounts mentioned by the informant and found indications of fraud, whereupon she referred the case to the IRS Criminal Investigation Division.

On January 12, 1977, the IRS sought a search warrant from a United States Magistrate. A supporting affidavit, generally recounting the informant's report and the information uncovered by Agent Rivard, was submitted to the magistrate. A warrant was then issued authorizing the search of the offices containing the files of Midwest and the related corporations. It directed the authorities to seize the following:

> corporate books and records, including but not limited to cancelled and duplicate checks, check stubs, journals, ledgers, weekly summaries, driver trip envelopes, and daily schedules, of the fellowing [sic] corporations: Midwest Growers Cooperative Corporation, Coast Express Inc., West Coast Systems Inc., and Interstate Carriers Corporation[,] which are the fruits and instrumentalities, of violations of 26 U.S.C. § 7201.

Later that day, the IRS conducted a search of the Midwest offices, seizing approximately 160 boxes of the named corporations' records containing over 100,000 documents dating back to the year 1968. Appellants unsuccessfully sought to suppress the seized materials. After the denial of their suppression motion, the appellants waived their right to a jury trial and, subject to the outcome of this appeal, agreed upon factual

* Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

stipulations. Based on the stipulations appellants were convicted and sentenced. In this appeal from their convictions appellants assert several grounds for reversal, only one of which, because of its disposition by this court, need be addressed. To that ground we now turn.

## II.

## ANALYSIS

### A. The Validity of the Search

■ We start with the text of the Fourth Amendment. Only a warrant "particularly describing the place to be searched and the persons or things to be seized" is valid. U.S.Const. amend. IV. This particularity requirement makes "general searches under [a warrant] impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant." *Marron v. United States*, 275 U.S. 192, 196, 48 S.Ct. 74, 76, 72 L.Ed. 231 (1927). The question before us is whether the warrant at issue describes the items to be seized with sufficient particularity.

In *Andresen v. Maryland*, 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976), the Supreme Court upheld a warrant against a challenge of insufficient particularity. Appellee contends that *Andresen* compels a similar result in this case. We disagree.

The defendant in *Andresen* was suspected of fraud in connection with the sale of Lot 13T and other land transactions. A warrant was issued authorizing the seizure of various "items pertaining to sale . . . of lot 13, block T." 427 U.S. at 480–81 n.10, 96 S.Ct. at 2748–49 n.10. The warrant proceeded to list numerous specific items related to that sale, but concluded with the phrase "together with other fruits, instrumentalities and evidence of crime . . . ." *Id.* The defendant asserted that the last phrase authorized the seizure of any evidence of any crime. Reading the warrant in a common sense fashion, as required by *United States v. Ventresca*, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965), the Court construed the warrant to cover only evidence of the crime of false pretenses with respect to the sale of Lot 13T. As so limited, the warrant was deemed sufficiently particularized.

The warrant at issue in our case is significantly different from the one involved in *Andresen*. Here there is no preambulatory statement limiting the search to evidence of particular criminal episodes. Thus, our situation is more akin to that which would have faced the *Andresen* Court had no reference to the Lot 13T sale been made. The Court's heavy reliance on the Lot 13T limitation suggests that the omission of such a limitation would have been fatal to the warrant's validity. *Andresen* clearly does not dictate that appellee prevail in this case.

The warrant at issue is more like warrants previously found to be overbroad. The only limitation on the search and seizure of appellants' business papers was the requirement that they be the instrumentality or evidence of violation of the general tax evasion statute, 26 U.S.C. § 7201. That is not enough.

The warrant here is nearly identical to the one disapproved in *Alioto v. United States*, 216 F.Supp. 48 (E.D.Wis.1963). There the IRS utilized a warrant to seize the "[b]ooks and records" of certain named parties "which are instrumentalities of crime involving the criminal provisions of Section 1621, Title 18, United States Code of Laws, and Section 7201, Internal Revenue Code of 1954." *Id.* at 49. The court found such a warrant to be impermissibly general and ordered the return of all materials seized under it.

■ The continuing validity of the reasoning of the *Alioto* case is demonstrated not only by *Andresen* but also by several recent circuit-level decisions reaching the same result in analogous situations. *See e.g., United States v. Cook*, 657 F.2d 730 (5th Cir. 1981); *United States v. Abrams*, 615 F.2d 541 (1st Cir. 1980); *United States v. Roche*, 614 F.2d 6 (1st Cir. 1980); *In re Lafayette Academy*, 610 F.2d 1 (1st Cir. 1979); *United States v. Drebin*, 557 F.2d 1316 (9th Cir. 1977), *cert. denied*, 436 U.S. 904, 98 S.Ct. 2232, 56 L.Ed.2d 401 (1978); *VonderAhe v. Howland*, 508 F.2d 364 (9th Cir. 1975). The *Lafayette Academy* and

*Abrams* cases involve warrants very similar to the one issued in this case. Both cases arose out of fraud investigations. In *Lafayette Academy* the warrant authorized seizure of "books, papers" and other listed documents that evidenced violations of a number of listed statutory provisions. 610 F.2d at 3. In *Abrams* the warrant authorized the seizure of "certain business and billing and medical records" that evidenced a fraudulent scheme violative of 18 U.S.C. § 1001. 615 F.2d at 542. In both situations "[t]he officers' discretion was unfettered, there is no limitation as to time and there is no description as to what specific records are to be seized." *Id.* at 543. As we noted before, "limiting" the search to only records that are evidence of the violation of a certain statute is generally not enough. In *Abrams* the district court had noted that such a limitation forced the executing officers "to make a legal distinction between fraudulent records and records that are not fraudulent, which they were not qualified to do." *Id.* at 542 n.2. The foregoing statements are equally applicable to the warrant presently before us. If items that are illegal, fraudulent, or evidence of illegality are sought, the warrant must contain some guidelines to aid the determination of what may or may not be seized. *See Drebin,* 557 F.2d at 1322–23. No such guidelines were contained in the warrant used against the appellants.

■ In reaching our conclusion we are mindful of the exigencies facing law enforcement officers. We read *VonderAhe* and *Andresen* as requiring courts to consider the totality of circumstances in determining the validity of a warrant. One of the crucial factors to be considered is the information available to the government. "[G]eneric classifications in a warrant are acceptable only when a more precise description is not possible." *United States v. Bright,* 630 F.2d 804, 812 (5th Cir. 1980); *see also Cook,* 657 F.2d 733; *VonderAhe,* 508 F.2d at 370.

In this case the IRS had conducted a lengthy investigation before seeking the warrant. Indeed, this investigation had already focused the agency's attention on certain portions of the appellants' business record. In conducting a civil audit Agent Rivard paid particular attention to those items indicated by the informant and her own investigation further refined the scope of her suspicions. The results of this investigation, however, were not used to refine the scope of the warrant. While we may not question the wisdom of using a warrant, as opposed to less intrusive methods available to the agency, *cf. Zurcher v. Stanford Daily,* 436 U.S. 547, 559, 98 S.Ct. 1970, 1978, 56 L.Ed.2d 525 (1978) (rejecting a "least intrusive means" test for searches of non-suspect's property), we may demand that "if such drastic procedure is to be availed of, it should be strictly limited as constitutionally required." *VonderAhe,* 508 F.2d at 369. Here, as in *VonderAhe,* "[u]pon the information available to it, the government knew exactly what it needed and wanted and ·where the records were located. There was no necessity for a massive re-examination of all records bearing on income and expenses." *Id.* at 370. Thus, the warrant is invalid.

### B. *Remedy*

The final issue is the appropriate remedy. Our alternatives are total or partial suppression of the seized evidence. Although the law is not well defined in this area, *see Cook,* 657 F.2d at 734 & n.3, we conclude that total suppression is necessary here.

■ Our starting point once again is *Andresen.* In that case the Court generally approved the severance of infirm portions of the warrant from valid portions, suppressing or returning items seized under the former portion, but not the latter. 427 U.S. at 482 n.11, 96 S.Ct. 2749 n.11; *see also In re Search Warrant Dated July 4, 1977,* 667 F.2d 117, 132–33 (D.C.Cir.1981); *Cook,* 657 F.2d at 734–35. Nevertheless, severance is not always possible. If no portion of the warrant is sufficiently particularized to pass constitutional muster, then total suppression is required. *Lafayette Academy,* 610 F.2d at 6. Otherwise the abuses of a general search would not be prevented.

■ In this case even the most specific descriptions (checks, journals, ledgers, etc.) are fairly general. No time or subject mat-

ter limitations existed as to these items. Nor does the affidavit, even if properly relied upon to limit the scope of the warrant, provide the information needed to limit the general nature of the warrant. *Cf. In re Search Warrant Dated July 4, 1977,* 572 F.2d 321 (D.C.Cir.1977) (using an affidavit that was cross-referenced to in and attached to the warrant to define the scope of the authorized search). It does not refer to specific records, either in terms of their character or date. Thus, we do not have the information necessary to salvage any portion of the search. *Cf. VonderAhe,* 508 F.2d at 372 (where the affidavit clearly identified specific records which could have been acquired under a valid warrant and partial suppression was ordered). Therefore, all the materials seized under the defective warrant should be suppressed. Accordingly, the decision below must be reversed.

REVERSED.