George R. and Teresa C. HUEBNER, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. No. MB–89–5414.

United States District Court, D. Arizona.

March 12, 1990.

**1442**

William A. Cohan, Encinitas, Cal., for plaintiffs.

Ivan K. Mathews, Asst. U.S. Atty., Phoenix, Ariz., for defendant.

### ORDER RE MOTION FOR RETURN OF PROPERTY (4216 E. Flower Street)

CARROLL, District Judge.

George R. and Teresa Huebner (Huebner) filed a *pro se* motion for the return of allegedly illegally seized property by the Internal Revenue Service. The seizure occurred at Huebner's residence (4216 E. Flower St., Phoenix, Az.) which also served as Huebner's offices for several business and personal interests.

George Huebner "asseverate[s]" [1] that:

He is a member of the National Commodity and Barter Association (NCBA) which is headquartered in Denver, Colorado;

He has been actively involved in recruiting new members for the NCBA for seven or eight years; and

As a service to members, he operates a warehouse exchange whereby "under a simple commonlaw contract to each individual member (principal) as agent, to pay their bills, cash checks and buy and sell gold and silver at each member's direction, under said contract, I agree to maintain information in absolute privacy."

NCBA, and particularly the warehouse exchange program (exchange), and efforts of the Government to obtain information about the operations of the program through search warrants, were before the federal courts as early as 1983. *In Re First National Bank, Englewood, Colorado,* 701 F.2d 115 (10th Cir.1983) (Search Warrant); *Voss v. Bergsgaard,* 774 F.2d 402 (10th Cir.1985) (Search Warrant); *Grandbouche v. Clancy,* 825 F.2d 1463 (10th Cir.1987) (Bivens action); *United States v. Stelten,* 867 F.2d 446 (8th Cir. 1989) (Search Warrant); *Pleasant v. Lovell,* 876 F.2d 787 (10th Cir.1989) (Bivens action); *National Commodity and Barter Ass'n v. Gibbs,* 886 F.2d 1240 (10th Cir. 1989) (Bivens action). This listing is not exhaustive of decisions discussing NCBA exchange programs, the subpoenaing of its members' records and criminal proceedings against members for violations of various federal criminal laws related to NCBA exchange program activities.

In Huebner's *pro se* motion, and as supplemented by his attorney William A. Cohan in subsequent memoranda, it is contended that the Search Warrant and its execution violated Huebner's constitutional rights under the First and Fourth Amendments to the United States Constitution. I disagree for the reasons set forth in this Order.

---

**1.** Blacks Law Dictionary, 5th Ed., pg. 108—"Asseveration,—An affirmation; a positive assertion; a *solemn declaration.* This word is seldom, if ever, used for a declaration made under oath, but denotes a declaration accompanied with solemnity or an appeal to conscience, whereas by an oath one appeals to God as a witness of the truth of what one says."

*Discussion*

*Fourth Amendment: Probable Cause*

▮ Huebner characterizes the warrants at issue as "indicia warrants" and therefore invalid "because 'no nexus was established between the indicia of association seized and the alleged criminal activity'". Citing *United States v. Rubio,* 727 F.2d 786, 792 (9th Cir.1984).

The circumstances in *Rubio* are wholly different than those presented to this Court. In *Rubio,* after ruling that "a narrowly drawn, and properly issued and executed warrant which authorizes the search for indicia of membership with a particular enterprise, does not violate [a] suspect's right to freedom of association", went on to hold that the evidence seized under the warrant should have been suppressed, because:

> None of the affidavits contain a statement of probable cause to believe that any defendant had conducted the affairs of the [Hell's Angels Motorcycle Club] through a pattern of racketeering activity, nor do the affidavits contain facts tending to support such a statement. The facts in the affidavits are limited to the establishment of association with the enterprise. These facts are insufficient to provide the requisite nexus between the association of the defendants with the enterprise and some form of criminal activity.

*Id.* p. 794.

Here, as in *In re Grand Jury Proceeding,* 842 F.2d 1229, 1236 (11th Cir.1988), (attorney William A. Cohan and others for William and Carolyn Bicket, the National Commodity and Barter Association (NCBA) and the National Commodity Exchange (NCE)), the affidavit supporting the issuance of the warrant outlines an investigation dealing with a program of "possible criminal violations, of the tax laws and suggests that individuals may be using the structure of NCBA's financial system to evade requirements for reporting taxable income." *Id.*

Special Agent Natalie D. Rookstool's affidavit in this case sets forth an extended (11 page) "FACTUAL BASIS FOR PROB-ABLE CAUSE" enumerating the purposes of the activities undertaken by Huebner as the NCBA representative for the greater Phoenix Area in operating an NCBA Warehouse Exchange program. The affidavit cites chapter and verse how Huebner operates the exchange and the purposes of such exchange.

This affidavit alleges probable cause to believe that Huebner had committed violations of 18 U.S.C. § 371 (Conspiracy to commit offense or defraud the United States), and 31 U.S.C. § 5313, 31 U.S.C. § 5324 and 31 C.F.R. § 103.11 et seq. (failure to file Currency Transaction Reports (CTRs)). *In re Grand Jury Proceeding, Id.; see also: U.S. v. Hawley,* 855 F.2d 595, 597 (8th Cir.1988). wherein the Circuit Court held that the District Court properly denied Hawley's motion to suppress evidence seized from his house relating to their operating a "business called the Mid–States Exchange (Exchange) a 'service wing' of the NCBA", and affirming their convictions "on four counts of violating the currency transaction report (CTR) requirements of the Bank Secrecy Act of 1970 (Act), codified at 31 U.S.C. § 5313 and 5322(a)." (William A. Cohan for appellant); *United States v. Premises Known as 1007 Morningside Avenue, Sioux City, Iowa,* 625 F.Supp. 1343, 1348, 1349 (N.D.Iowa 1985), affirmed *U.S. v. Rosenberger,* 872 F.2d 240 (8th Cir.1989) (Jennifer A. Greene, Denver, Colorado, for Rosenberger).

As noted in *U.S. v. Storage Spaces Designated Nos. 8 & 49,* 777 F.2d 1363, 1365 (9th Cir.1985):

> The standard for review of a magistrate's probable cause determination is whether the magistrate "had a 'substantial basis for ... conclud[ing]' that a search would uncover evidence of wrongdoing." *Illinois v. Gates,* 462 U.S. 213, 236, 103 S.Ct. 2317, 2331, 76 L.Ed.2d 527 (1983) (quoting *Jones v. United States,* 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960)). There are essentially two elements involved: evidence that a crime has occurred, and evidence that the place to be searched contains evidence of that crime. *See United States v. Feder-*

**1444**

*bush*, 625 F.2d 246, 252 (9th Cir.1980). A magistrate's finding of probable cause should be given "substantial deference." *United States v. Flores*, 679 F.2d 173, 176 (9th Cir.1982), cert. denied, 459 U.S. 1148, 103 S.Ct. 791, 74 L.Ed.2d 996 (1983).

To this same effect, *see: U.S. v. Holzman*, 871 F.2d 1496, 1511 (9th Cir.1989).

Giving heed to this standard and after examining the search warrant and the supporting affidavit, I conclude without question that there was probable cause to issue the warrant.

*FOURTH AMENDMENT: Overbreadth*

Huebner claims that the 4216 East Flower Street search warrant was unconstitutionally general and overbroad. (See attached Exhibit A for the description of the "Property to be Seized").

*United States v. Spilotro*, 800 F.2d 959, 963 (9th Cir.1986) provides a thoughtful discussion of criteria relevant in making a determination whether a warrant describes "the items to be seized with sufficient particularity to be valid under the Fourth Amendment":

> The Fourth Amendment requires that a warrant particularly describe both the place to be searched and the person or things to be seized. The description must be specific enough to enable the person conducting the search reasonably to identify the things authorized to be seized. *See [U.S. v.] McClintock*, 748 F.2d [1278] at 1282 [9th Cir.1984]; *[U.S. v.] Hillyard*, 677 F.2d [1336] at 1339 [9th Cir.1982]. This requirement prevents general, exploratory searches and indiscriminate rummaging through a person's belongings. *McClintock*, 748 F.2d at 1282. It also ensures that the magistrate issuing the warrant is fully apprised of the scope of the search and can thus accurately determine whether the entire search is supported by probable cause. *See Hillyard*, 677 F.2d at 1339.

> The specificity required in a warrant varies spending on the circumstances of the case and the type of items involved. Warrants which describe generic catego-

ries of items are not necessarily invalid if a more precise description of the items subject to seizure is not possible. *See United States v. Cardwell*, 680 F.2d 75, 78 (9th Cir.1982). In determining whether a description is sufficiently precise, we have concentrated on one or more of the following: (1) whether probable cause exists to seize all items of a particular type described in the warrant, *see, e.g., McClintock*, 748 F.2d at 1283; *United States v. Offices Known as 50 State Distributing Co.*, 708 F.2d 1371, 1374 (9th Cir.1983), cert. denied, 465 U.S. 1021, 104 S.Ct. 1272, 79 L.Ed.2d 677 (1984); (2) whether the warrant sets out objective standards by which executing officers can differentiate items subject to seizure from those which are not, *see, e.g., United States v. Pollock*, 726 F.2d 1456, 1466 (9th Cir.1984); *[U.S. v.] Gomez–Soto*, 723 F.2d [649] at 653–54 [9th Cir.1984]; *Hillyard*, 677 F.2d at 1340; and (3) whether the government was able to describe the items more particularly in light of the information available to it at the time the warrant was issued, *see, e.g., Cardwell*, 680 F.2d at 78; *Hillyard*, 677 F.2d at 1339–40. *Accord United States v. Cortellesso*, 601 F.2d 28, 32 (1st Cir.1979), cert. denied, 444 U.S. 1072, 100 S.Ct. 1016, 62 L.Ed.2d 753 (1980).

The Huebner warrant was seemingly drafted with *Spilotro* in mind, including the Court's comments concerning matters that could have been included in the warrant being discussed in *Spilotro* to satisfy Fourth Amendment requirements.

The Huebner warrant identifies known criminal transactions; i.e. a purpose and practice of violating currency transaction reporting requirements. 31 U.S.C. § 5313 (Reports on domestic coins and currency transactions); 31 U.S.C. § 5324 (Structuring transactions to evade reporting requirements prohibited) and 31 C.F.R. § 103.11 *et seq.* (Financial Recordkeeping and Reporting of Currency Transactions). The warrant in Paragraphs 1–5 sets forth numerous specific records to be seized relating to concealing currency transactions from the Internal Revenue Service.

The warrant also referenced violations of 18 U.S.C. § 371 (Conspiracy to commit offense or to defraud United States) and identified the purposes of the conspiracy:

> 9. Any and all records, books, and documents relating to communications between persons conspiring to defraud the Internal Revenue Service, or preparations by such conspirators to conceal or prevent the full detection by law enforcement authorities of such fraud including correspondence, telephone toll records, agreements, wire transfers, telexes, research, memoranda and notes.

The instant warrant met the requirements of *Spilotro* that a warrant should reference both the statutes claimed to be violated *and* the records used, or intended to be used, as a means of committing a federal offense. *Id.* at 964.

█ A search warrant need not set forth the names of unknown conspirators or provide specific dates for conspiratorial actions when those dates are not known. The undercover agents in this case are not co-conspirators, and the government does not claim that they are. Huebner's argument that because the agents are the only account holders identified in the affidavit of probable case, there can be no conspiracy is simplistically absurd. The co-conspirators, if a conspiracy is established in a subsequent proceeding, will be those persons who knowingly and willfully entered into an agreement to do something unlawful, etc. (See Manual of Model Criminal Jury Instructions For the Ninth Circuit, 1989 Edition, Instruction 8.05A (Conspiracy —Elements)).

█ An NCBA Warehouse Exchange, per Ms. Rookstool's Affidavit and as recounted in numerous reported decisions— and acknowledged by Huebner—is to create and use warehouse accounts and commercial bank accounts to conceal the financial transactions of the account holder.

Here, given the circumstances of the exchange operation, and the reasonable inference that the claimed illegal activities permeated the entire NCBA exchange operations conducted by Huebner, the warrant sufficiently described the premises to be searched and provided reasonable parameters for the items to be seized.

Prior decisions of the Ninth Circuit of Appeals support the validity of the Warrant. In *United States v. Offices Known as 50 State Distrib.*, 708 F.2d 1371, 1373 (9th Cir.1983) the Court upheld a search a warrant more general than the Huebner warrant:

> ... The warrant left the executing officers with no discretion. While the seizure was extraordinarily broad, and in that sense 'general', under the particular facts of this case the scope of the warrant was justified. It was not possible through more particular description to segregate those business records that would be evidence of fraud from those that would not, for the reason that there was probable cause to believe that fraud permeated the entire business operation of 50 State.

As discussed previously, the affidavit in this case provided probable cause for issuance of the warrant; the warrant itself was sufficiently certain, given "the particular facts of this case", to justify seizure of the records identified in the warrant specifically and by generic classification. The fact that the warrant in *50 State Distrib.* "incorporated" a 27 page affidavit does not serve to limit the holding of that case to situations where a warrant incorporates an affidavit or an affidavit is attached to the warrant.

The Tenth Circuit case, *Voss v. Bergsgaard*, 774 F.2d 402 (10th Cir.1985), upon which Huebner relies, presents a different factual situation (a conspiracy to violate a criminal law); has been limited to its facts by later 10th Circuit cases;[2] is contrary to

---

**2.** *United States v. Lamport,* 787 F.2d 474, 476 (10th Cir.1986) "Thus this case is unlike *Voss v. Bergsgaard,* 774 F.2d 402 (10th Cir.), where the

warrant was open ended and the Government failed to pinpoint the statutes violated or to

9th Circuit precedent[3] and has been rejected by the Eighth Circuit. *See* in this regard *Stelten, Id.* at 450:

> "The appellants, however, also raise the overbreadth challenge against the South Dakota warrant. Our review of Eighth Circuit law, in contrast to Tenth Circuit case law, indicates the South Dakota search warrant in this case is not facially overbroad because it called for the seizure of property being used in violation of federal law and because the seizure was limited to property involved in the alleged crime."

> "In *Voss*, the district court did not find probable cause to believe that fraud pervaded every aspect of NCBA."

*Id.* at 406.

I reach a different conclusion regarding the warehouse exchange program.

### FOURTH AMENDMENT: Overbroad Search Execution

█ During the December 15, 1989 search at 4216 E. Flower Street, government agents seized sundry items that have since been returned to Huebner. Several of these items were beyond the scope of the warrant. The nature of these items and their limited number does not support a request to return *all* items seized during the search. Here, there was no flagrant disregard for the limitations of the search warrant.

The appropriate remedy in this instance was pointed out in *50 State Distrib., Id.,* at 1375:

> ... The issue before us is whether by its scope, the warrant was invalid as a general warrant rendering all that was seized under the warrant subject to return. If probable cause was lacking as to the search of individuals, that does not render the warrant itself invalid in its entirety as a general warrant. The remedy is not a return of all items seized but a selective suppression or return of the items improperly seized. *cf. United States v. Cardwell,* 680 F.2d 75, 78–79 (9th Cir.1982). Approving partial suppression remedy as to improper warrant; *see also Andresen v. Maryland,* 427 U.S. [463] at 482, n. 11, 96 S.Ct. [2737] at 2749, n. 11 [49 L.Ed.2d 627 (1976)].

This same proposition was approved earlier in *United States v. Tamura,* 694 F.2d 591, 597 (9th Cir.1982):

> Generally, the exclusionary rule does not require the suppression of evidence within the scope of a warrant simply because other items outside the scope of the warrant were unlawfully taken as well.

*See also: United States v. Gomez–Soto,* 723 F.2d 649, 654 (9th Cir.1984).

The Huebner warrant was not facially overbroad. Accordingly, the warrant also passes muster under the good faith exception enunciated in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). In the Ninth Circuit this exception applies to Rule 41(e) motions. *Center Art Galleries–Hawaii, Inc. v. U.S.,* 875 F.2d 747, 751 (9th Cir.1989).

The officers conducting the search on December 15, 1989 had a right to rely on the objective reasonableness of the warrant including the fact that it had been issued by a neutral magistrate. *Stelten, Id.,* p. 450, as well as applicable legal authority from this, and other circuits; their assessment of the warrant was not limited in any way, as Huebner would have it, to the holding of the *Voss* majority opinion.

Huebner has the opportunity to move to suppress any specific evidence seized on December 15, 1989, which is believed to be either beyond the scope of the warrant or taken under a particular paragraph which is arguably overbroad.

### FIRST AMENDMENT:

█ The nexus between "membership applications for NCBA account holders" (paragraph 3 of the Huebner Warrant) and the alleged criminal activity being investigated would appear obvious to all but the most partisan of observers. That nexus was presumably apparent to the Magistrate who issued the Huebner warrant

---

establish that the alleged crime permeated the business."

**3.** The *Voss* Court rejected the reasoning of *50 States Distrib., Id.* at 406.

based on Special Agent Rookstool's affidavit, paragraph 9(e-k).

This nexus was found to exist in *In re Grand Jury Proceeding, Id.* In reaching its decision, the 11th Circuit discussed at length "the level of protection [to be] afforded [under the First Amendment to] corporations with dual or multiple purposes," i.e., such as "NCBA [which] exists both to promote its members' political opinions and to provide the members with financial services not warranting the protection of the first amendment." *Id.* at 1234. The Court went on to conclude:

> In the instant case, we need not decide the precise evidentiary standard applicable to NCBA's motion to quash. Even assuming *arguendo* that NCBA can demonstrate an infringement of its freedom of association, the government nonetheless has established a justification for this infringement. 'The right to associate for expressive purposes is not ... absolute.' *Roberts v. United States Jaycees*, 468 U.S. [609] 623, 104 S.Ct. [3244] at 3252 [82 L.Ed.2d 462 (1984)]. '[T]here are governmental interests sufficiently important to outweigh the possibility of infringement ...' *Buckley v. Valeo*, 424 U.S. [1] at 66, 96 S.Ct. [612] at 657 [46 L.Ed.2d 659 (1976)]. As explained above, the government may take action that would infringe upon the freedom of association when it can demonstrate a 'substantial relation' to a compelling interest. *See Buckley v. Valeo*, 424 U.S. at 64, 96 S.Ct. at 656; *Gibson v. Florida Legislative Investigation Committee*, 372 U.S. [539] at 546, 83 S.Ct. [889] at 893 [9 L.Ed.2d 929 (1963)].

> There is no doubt that this case implicates a compelling governmental interest. The government is investigating possible criminal violations of the tax law and suggests that individuals may be using the structure of NCBA's financial system to evade requirements for reporting taxable income. A good-faith criminal investigation into possible evasion of reporting requirements through the use of a private banking system that keeps no records is a compelling interest. 'No power is more basic to the ultimate purpose and function of government than is the power to tax.' *Bates v. City of Little Rock*, 361 U.S. 516, 524, 80 S.Ct. 412, 417, 4 L.Ed.2d 480 (1960).

> We consider, finally, whether the government has established a 'substantial relation' between the information sought and the compelling interest. We have examined the records under seal forwarded to us from the district court, and we conclude that the government has made this showing.

> Accordingly, the order of the district court denying appellants' motion to quash is AFFIRMED.

In a similar NCBA warrant case, *U.S. v. Stelten, Id.*, p. 447, the 8th Circuit denied "motions to suppress allegedly illegally seized evidence". The Court rejected the NCBA members' contentions that the warrant violated their "first amendment rights by calling for the seizure of documents indicating names of NCBA members":

> Nor do we find in the present case any violation of the 'scrupulous exactitude' standard of *Stanford v. Texas*, 379 U.S. 476, 85 S.Ct. 506, 13 L.Ed.2d 431 (1965). In *Stanford v. Texas*, the Supreme Court held that warrants calling for the seizure of books on the basis of the objections to ideas they contain must describe the items to be seized with 'scrupulous exactitude.' 379 U.S. at 485, 85 S.Ct. at 511–12. When the government wishes to seize written material for any reason other than the content of the material, the first amendment is not infringed and the scrupulous exactitude test does not apply.

> The IRS listed items in the Colorado and South Dakota warrants that were business records documenting the financial transactions of the banking warehouses. Although some of the seized documents identified the names of people who participated in the activities of the NCBA, NCE and MSE, that fact does not render their seizure a violation of the members' right of association. Seizure of a customer's warehouse receipt file is proof of the way in which he or she used the NCE's financial services to conceal income. This type of business record in

no way resembles 'indicia of membership,' as its evidentiary value is independent of the association it demonstrates . . .

Accordingly for the reasons stated by this Court,

IT IS ORDERED denying Huebner's Motion for Return of Property Seized at 4216 E. Flower Street, Phoenix, Arizona.

IT IS FURTHER ORDERED that this ORDER is without prejudice to Huebner's right to move for suppression of particular items of evidence unrelated to the NCBA warehouse exchange program.

## EXHIBIT A

### PROPERTY TO BE SEIZED

1. Any and all bank records pertaining to financial transactions of National Commodities and Barter Association/GEORGE ROBERT HUEBNER conducted at banking institutions including, periodic bank statements, cancelled checks, check registers, deposit tickets, withdrawal slips and wire transfers.

2. Any and all books, records, or documents evidencing the purchase, sale or storage of precious metals including, inventories, vault records, storage contracts or agreements, confirmation slips, member orders, invoices and delivery or bailment documents.

3. Deposit/Payout Forms, Transfer/Payout Conversion Receipts and membership applications for NCBA account holders.

4. Any and all books, records, or documents relating to customer accounts including, identities of customers, contracts, statements of account, warehouse receipts, confirmation slips, mail receipts, customer order slips, billing invoices, unopened mail, or other evidence of indebtedness submitted by customers for purpose of payment by NCBA, checks, cashier's checks, wire transfers, or other instruments used by NCBA to make payments on customers debts and customer correspondence.

5. Computer and computer components, word processing units, disks and/or software containing account numbers, customer names, account balances and/or transaction records, data and records stored in floppy diskettes and/or hard disk removable modules and/or magnetic computer recording tapes.

6. Currency, cashier's checks, and precious metals (including gold and silver).

7. Any and all books, records, or documents relating to the marketing or promotion of the NCBA.

8. Books, pamphlets, correspondence, video and audio tapes, and documents advocating nonpayment of federal income taxes or illegitimate means to evade payment of federal income taxes.

9. Any and all records, books, and documents relating to communications between persons conspiring to defraud the Internal Revenue Service, or preparations by such conspirators to conceal or prevent the full detection by law enforcement authorities of such a fraud including correspondence, telephone toll records, agreements, wire transfers, telexes, research, memoranda and notes.

All of which are evidence of violations of 31 USC 5313; 31 USC 5324; 31 CFR Section 103.11 et seg.; and 18 USC 371.