**UNITED STATES of America**

v.

**James V. BARR, III.**

**No. 3:93–00052.**

United States District Court,
M.D. Tennessee,
Nashville Division.

Sept. 14, 1993.

Robert Washko, Asst. U.S. Atty., Nashville, TN, for plaintiff.

Al Knight, Nashville, TN, for defendant.

### *MEMORANDUM*

JOHN T. NIXON, Chief Judge.

On August 23, 1993 this Court heard oral argument on Defendant's Motion to Suppress (Doc. No. 66) items of personal property seized from his office, on or about January 19, 1993, pursuant to a federal search warrant. For the reasons that follow the Court grants Defendant's Motion.

### BACKGROUND

The Defendant's Motion to Suppress arises from a federal indictment of James V. Barr III and Theresa K. Ross. Mr. Barr and Ms.

Ross, who were married in December 1991, are charged with violating federal law by providing false information to banks in order to obtain loans. According to the Government, Defendant Barr assisted Ms. Ross in defrauding financial institutions by providing fraudulent statements on her behalf, allowing her to use the safe in his law office, and providing numbers of closed accounts for her to use on loan applications. In support of a loan application, Defendant Barr allegedly claimed to be the trustee of a property in Nashville, and that he rented this property to Ms. Ross. The Government contends that the property in question was donated to the University of the South in May 1992 by the estate of Foster Hume, III and Ms. Ross did not reside there. The Government also asserts that Defendant Barr concealed assets from the United States Bankruptcy Court in violation of 18 U.S.C. § 152.

## DISCUSSION

Defendant argues that the Government used three-month-old information regarding the existence of $25,000 in cash to remove items of personal property from Defendant's safe which had no apparent relation to the cash. He contends that the warrant should never have been issued because the information forming the basis of the warrant was stale, and because the warrant itself was overbroad.

The Government argues that there is no staleness problem. Probable cause for the search warrant existed because there were reasonable grounds for belief of criminal activity. Furthermore, according to the Government, the warrant adequately specified the objects of the search and the items seized in the search were within those limitations.

I. Staleness of the Search Warrant With Respect to the Currency Seized in the Search

■ A search warrant can be granted only upon probable cause, U.S. Const. amend. IV., and probable cause must exist at the time the warrant issues. *Sgro v. United States*, 287 U.S. 206, 210–11, 53 S.Ct. 138, 140, 77 L.Ed. 260 (1932). *Sgro* involved a search of a hotel for liquor based on a warrant that was origi-

nally granted twenty-one days before the search was made. *Id.* The Supreme Court reasoned that probable cause which existed at the date of the issuance of the warrant did not exist days later and thus, invalidated the warrant. *Id.*

■ Defendant argues that the search warrant in the present case was based on stale information and therefore, there was no probable cause to justify the warrant. Defendant's conclusion is based on the fact that the Government relied on a photograph of a vault with stacks of United States currency and a newspaper dated October 16, 1992 to obtain the warrant. Warrant with McGraw Aff. at 7 (Doc. No. 1). In light of the disposable nature of money and the fact that more than three months elapsed before the search, according to Defendant, there was no reason to believe that the $25,000 would be in the vault.

The Government's very narrow position is that the search for the $25,000 lump sum defeats staleness. The Government argues that while fungible, and spendable, Ms. Ross would have kept the whole lump sum together because she was awaiting approval on a loan for which the $25,000 was collateral. Thus, it was reasonable to believe that the money was still in the safe and not spent.

The Court finds sense in the Government's argument and finds probable cause existed to search, but only to search for the full $25,000 amount, not merely for "any money at all." When the agent found only $1,350, according to Government's own theory, he no longer had probable cause to seize it. The grounds for the search became stale at that moment. The circumstance against which the Fourth Amendment protects materialized: old information with respect to fungible material cannot authorize the seizure of goods which can no longer be identified as that for which one is searching. *See Sgro*.

The Court concludes that the only possible rationale for seizing $1,350 would have been if the agent had a list of all of the serial numbers on the entire $25,000, and then wanted to compare the numbers. However, even in such a situation, it would have been preferable for the agent to simply photo-

graph the $1,350 to compare and not seize what was likely totally unrelated money.

## II. The Issue of the Generality of the Search Warrant

In *Berger v. New York*, 388 U.S. 41, 58, 87 S.Ct. 1873, 1883, 18 L.Ed.2d 1040 (1967), a New York statute authorized broad searches by electronic devices. Furthermore, warrants granted under the statute were not required to describe with particularity the information sought by the government. *Id.* The statute also enabled the government to repeatedly search and seize over a two-month period upon only one showing of probable cause. *Id.* The Court invalidated the statute concluding that general warrants are violative of the Fourth Amendment. *Id.* The Court was especially offended by the virtually unfettered power granted to the government by the statute in question: "[T]he statute's failure to describe with particularity the conversations sought gives the officer a roving commission to 'seize' any and all conversations. . . . As with general warrants this leaves too much to the discretion of the officer. . . ." *Id.*

In the case at bar, Defendant asserts that the search warrant failed to particularly describe the things to be seized as required by the Fourth Amendment. The Government contends that the search warrant is not general. First, the warrant limited the search to the vault. Second, the affidavit of the agent conducting the search specified what was sought and was incorporated as part of the warrant. Thus, any determination of particularity must consider the affidavit as well as the warrant.

### A. Generality As Regards the Currency and Identifying Documents

■ With respect to the $25,000, although the warrant refers only to "United States currency," without regard to amount or denomination, the Court concludes that the affidavit and accompanying exhibits provide sufficient specificity to withstand Constitutional muster. According to the affidavit, the probable cause for the search was that Ms. Ross was allegedly maintaining $25,000 in cash in

Defendant Barr's safe to be used in a scheme to defraud a bank.

The Court concludes that the Government's theory is that the warrant was referring specifically to an approximate amount of $25,000, and that the agent had probable cause to search for the lump sum. In light of Defendant's argument with respect to staleness, and this Court's finding above, the Court finds that had the agent found cash in the approximate amount of $25,000 in the safe, he would have been justified in seizing it, along with any documents tending to establish its ownership. However, because the agent found only $1,350 in currency, he exceeded the scope of the warrant in seizing it. Moreover, the other material taken from the safe was also wrongly seized because it did not relate to the ownership of the $25,000.

### B. Generality As Regards the Documents Relating to Criminal Offenses

■ As to the documents relating to criminal offenses, the Court finds that the search warrant was invalid because it lacked sufficient particularity.

The Government's theory is that because there was probable cause to find $25,000 in the safe and there was a history of alleged fraud, there was also probable cause to find documents that would be evidence of criminal offenses in the same vault. The warrant authorized the search and seizure of "any documents ... which reasonably appear to relate to the offenses described in the attached affidavit." Warrant at 1 (Doc. No. 1) Such a description, however, failed to specify the documents sought or adequately link the allegations of criminal activity with the documents sought.

The warrant in the instant case is analogous to that in *United States v. Cardwell*, 680 F.2d 75 (9th Cir.1982). In *Cardwell* the IRS seized documents pursuant to a warrant authorizing seizure of documents "which [were] the fruits and instrumentalities, of violations of 26 U.S.C. § 7201." *Id.* at 76. *Cardwell* held that the search was invalid and noted that a specification to seize only those documents relevant to the violation of a statute is insufficient: "If items that are illegal, fraudulent, or evidence of illegality are sought, the

warrant must contain some guidelines to aid the determination of what may or may not be seized." *Id.* at 78 (citation omitted).

In the case at bar, as in *Cardwell,* the Government had no guidance in determining the relevance of the documents to be seized. The Fourth Amendment requirement, that a warrant "particularly describ[e] the ... things to be seized," was not met. The Court rules that the seized evidence must be suppressed.

### CONCLUSION

For the aforementioned reasons, the Court grants Defendant's Motion to Suppress and orders that all property seized during the search of Defendant's office be returned to him. An Order consistent with the foregoing reasoning will be entered contemporaneously with this Memorandum.

### *ORDER*

On August 23, 1993 this Court heard oral argument on Defendant's Motion to Suppress (Doc. No. 66) items of personal property seized from his office, on or about January 19, 1993, pursuant to a federal search warrant (Doc. No. 1).

Consistent with the contemporaneously filed Memorandum, the Court hereby GRANTS Defendant's Motion, and ORDERS that all property seized during the search of Defendant's office be returned to him.