**UNITED STATES of America, Plaintiff,**

v.

**Lawrence G. KISSLER, Defendant.**

**No. A96–0038 CR (JKS).**

United States District Court,
D. Alaska.

Aug. 14, 1996.

Robert C. Bundy, United States Attorney, Joseph W. Bottini, Assistant United States Attorney, for Plaintiff, United States of America.

F. Richard Curtner, Federal Public Defender, Michael S. Taggart, Assistant Federal Public Defender, for Defendant, Lawrence G. Kissler.

## ORDER

SINGLETON, Chief Judge.

Lawrence G. Kissler ("Kissler") is charged, in a five-count indictment, with violations of the "Lacey Act." 16 U.S.C. §§ 3371–3378 (West 1996). Kissler is charged in counts one and two with violations of 16 U.S.C. § 3372 and 18 U.S.C. § 3373 for transporting Dall sheep parts in interstate commerce, knowing that the Dall sheep were taken in violation of ALASKA STAT.

§ 16.05.340(a)(15)(I). Count one involves a Dall sheep taken by Calvin Johnson and transported on August 15, 1994. Count two involves a Dall sheep taken by Raymond Weaver and transported on August 15, 1994. Kissler is charged in counts three and four with violations of 16 U.S.C. § 3372, 16 U.S.C. § 3373, and 18 U.S.C. § 2, for attempting to transport Dall sheep parts in interstate commerce knowing that the Dall sheep were taken in violation of ALASKA STAT. § 16.05.340(a)(15)(I). Count three involves a Dall sheep taken by Joseph Shearer ("Shearer"), which Kissler allegedly attempted to transport on August 11, 1995. Count four involves a Dall sheep taken by Billy Shipp ("Shipp"), which Kissler allegedly attempted to transport on August 11, 1995. In count five, the government seeks the forfeiture of Kissler's airplane, which was allegedly used in the commission of the charged Lacey Act violations. A joint federal-state investigation produced the evidence against Kissler. It appears that the identity of Calvin Johnson and Raymond Weaver, and the transactions involving these men, were not known to either the State or the federal government before a State search warrant was executed at Kissler's home/office. Kissler moves to suppress the fruits of that search, contending that the search warrant is "overbroad." Docket Nos. 16, 25, 36, 39. The motion is opposed. Docket Nos. 18, 26, 35, 38. Magistrate Judge Branson, to whom this matter was initially referred, held an evidentiary hearing and issued a preliminary and a final report and recommendation suggesting that the motion in large part be granted. Docket Nos. 29, 40. The Court has obtained a transcript of the evidentiary hearing, reviewed the record *de novo*, giving deference to Magistrate Judge Branson's credibility determinations, if any, and after exercising its independent judgment concludes that the motion to suppress should be denied. *See United States v. Cheely*, 814 F.Supp. 1430, 1437–38 (D.Alaska 1992) (setting out standards for reviewing a magistrate judge's determinations in contested motion practice).[1]

---

**1.** Kissler initially moved to suppress the fruits of a search warrant executed at his lawyer's office. Docket No. 16. By agreement of the parties, it was determined that no evidence or fruits of evidence derived from that search warrant would be used against Kissler. *See* Docket No. 25 at 2.

The Fourth Amendment to the United States Constitution provides in part: "[N]o Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV. The purpose of the Fourth Amendment's particularity requirement for warrants is to make general search warrants impossible. *Marron v. United States*, 275 U.S. 192, 196, 48 S.Ct. 74, 76, 72 L.Ed. 231 (1927). The evil to be prohibited is the "exploratory rummaging in a person's belongings." *Andresen v. Maryland*, 427 U.S. 463, 480, 96 S.Ct. 2737, 2748, 49 L.Ed.2d 627 (1976) (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 467, 91 S.Ct. 2022, 2038–39, 29 L.Ed.2d 564 (1971)). The concern is particularly important where the search extends to a person's private documents, letters, and memos where her most private thoughts might be captured. *Id.* at 482 n. 11, 96 S.Ct. at 2749 n. 11. The relevance of private papers is rarely apparent and the party conducting the search must necessarily examine innocuous documents, if only in a cursory manner, to determine whether they meet the guidelines in the warrant. *Id.; United States v. Rodriguez*, 869 F.2d 479, 486 (9th Cir.1989) (quoting *Marron* and *Andresen* ) There is dicta in *Marron* that suggests that the warrant should be self-executing so that the investigator exercises no discretion at all, but of course this is impossible. Some discretion is a necessary aspect of any human endeavor. *See generally* 2 WAYNE R. LAFAVE, SEARCH AND SEIZURE

§ 4.6(d), at 566–70 (3d ed. 1996). A warrant must be reasonably specific, not elaborately detailed, and address the subject to be seized in light of the information available to the person seeking the warrant. *Rodriguez*, 869 F.2d at 486–87. The degree of specificity required is flexible and may vary depending on the circumstances and the type of items involved. *United States v. Holzman*, 871 F.2d 1496, 1508 (9th Cir.1989).

Kissler argues that the search warrant in this case permits unlimited search and seizure and does not contain the requisite specificity of items to be seized to pass constitutional muster. Docket No. 25. The search warrant issued by Alaska State District Court Magistrate Judge Ronald Smith provides for the search and seizure of the following: "Freshly killed sheep's head with horns and skin attached; pilot log books; records, writings, receipts, names and addresses of 'clients,' bank account numbers, phone numbers of clients ... which is evidence of the particular crime(s) of unlawful acts in violation of AS 08.54.520(9)[sic]." [2] Docket No. 18, Exh. 3. Kissler notes that in general the Ninth Circuit frowns on statutory references which are not specific as to the alleged acts of violation. Docket No. 25. Kissler primarily relies upon two cases in support of his contention that search warrants referencing criminal statutes rather than specific criminal acts are overbroad. Docket No. 25; *United States v. Spilotro*, 800 F.2d 959 (9th Cir.1986) and *United States v. Cardwell*, 680 F.2d 75 (9th Cir.1982); *see also United States v. Clark*, 31 F.3d 831 (9th

---

While Kissler expressed concern that prejudicial fruits might exist, it appears that this aspect of the motion has been withdrawn. Kissler also complained that the circumstances surrounding the joint investigation, the state search, and the federal prosecution somehow denied his federal constitutional rights to due process by depriving him of the more favorable (from his standpoint) approach of the Alaska courts to search and seizure issues. It appears that a suppression hearing was pending in state court when the *res* was transferred to the federal agents, and that the state judge declined to rule on the motion to suppress on the theory that no further action in the state forum was contemplated. Kissler has not pursued this argument.

**2.** ALASKA STAT. § 08.54.520(a)(9) provides in relevant part:

(a) It is unlawful for a ....
(9) person to knowingly provide transportation services to big game hunters without holding a transporters license.

Kissler correctly points out that the search warrant does not correctly reference subsection (a)(9). The omission of "(a)" is *de minimis*. Upon review of the statute by the officers conducting the search, they would immediately note that § 520(9) does not exist, that only subsection (a) references prohibited acts, subsections (b) through (f) provide penalties for the prohibited acts, and no subsection except (a) has more than three sub-entries. Thus, transposing the warrant would then read, "... sheep head ... which is evidence of the particular crime(s) of knowingly providing transportation services to big game hunters without holding a transporter's license."

Cir.1994). In *Spilotro,* the warrant being challenged as overbroad allowed for the search of a jewelry store and permitted seizure of numerous classes of documents as evidence of violations of 13 statutes identified by section number. *Spilotro,* 800 F.2d 959. Affirming the lower court's suppression of evidence, the Ninth Circuit noted that the statutes could have been described with more particularity because, as listed, the statutes could encompass several hundred separate criminal acts. *Id.* at 964. Moreover, no specific criminal transactions were set forth in the warrant. *Id.* The court also noted that the focus of the investigation was on loan sharking, and bookmaking by inference, suggesting that among the several hundred possible offenses covered by the listed statutes, the occupant of the premises was probably not believed to be involved in most. *Id.* In *Cardwell,* a criminal tax fraud prosecution, the warrant authorized seizure of any books, records, etc., showing a violation of 26 U.S.C. § 7201, which makes any willful failure to pay any tax a crime and inferentially incorporates by reference the entire Internal Revenue Code and all of its regulations. 680 F.2d at 76. The Ninth Circuit found the warrant to be impermissibly general and thus overturned Cardwell's conviction. *Id.* at 77, 79.

*Cardwell* and *Spilotro* have little relevance to this case, where the statutory cite—ALASKA STAT. § 08.54.520(a)(9)—deals with a single means of violation, *i.e.,* transporting hunters for hire without a transporting license. If we substitute the text of the cited statutes in *Spilotro* and *Cardwell* in their respective warrants, we still have no notice of what specific criminal acts were involved. In fact, we have notice of numerous specific criminal acts that were not involved. The problems in *Spilotro* and *Cardwell* do not exist in this case. When the text of ALASKA STAT. § 08.54.520(a)(9) is substituted for the citation in the warrant, the officer conducting the search knows that she is searching for evidence of an offense that has a single set of elements. Pursuant to section 520(a)(9), it is unlawful for a person to: 1) knowingly provide; 2) transportation services; 3) to big game hunters; 4) without holding a transporter license. ALASKA STAT.

§ 08.54.520(a)(9). The officers making the search in this case are specialized law enforcement officers charged with enforcing fish and game laws. The Court may assume that the officers were aware of the definition section of Chapter 54 (§ 590), which defines "big game" to include Dall sheep (§ 590(2)) and "transportation services" to mean "the carriage for compensation of big game hunters, their equipment, or big game animals harvested by hunters to, from, or in the field; 'transportation services' does not include the carriage by aircraft of big game hunters, their equipment, or big game animals harvested by hunters...." (§ 590(13)). Admittedly, there is a piquant ambiguity in the last part of this definition as it applies to Kissler because he was suspected of transporting hunters in aircraft, but the ambiguity is an issue only for the state courts. Magistrate Judge Smith found probable cause to believe that Kissler was violating the statute, implicitly finding that the aircraft exemption did not apply to him. While Kissler might challenge a prosecution under that statute on vagueness grounds, he has not contended that the magistrate judge's probable cause determination was flawed. In this case, the federal government is not relying upon ALASKA STAT. § 08.54.520(a)(9) in its Lacey Act prosecution.

■ In addition to challenging the use of a statutory citation as a means of particularizing a warrant for documents, Kissler argues that the warrant did not particularly describe the items to be seized and was overbroad in identifying items so as to permit a general search. Docket Nos. 25, 36, 39; *see In re Grand Jury Subpoenas,* 926 F.2d 847, 857 (9th Cir.1991). He argues that despite a great deal of information about Kissler's operations, the government did not narrow the search to the specific crimes it had in mind, namely transporting Shearer and Shipp on August 11, 1995, and the specific documents relating to them. Docket Nos. 25, 36, 39. He relies primarily upon five decisions of the Ninth Circuit Court of Appeals: *United States v. Kow,* 58 F.3d 423 (9th Cir.1995); *Center Art Galleries–Hawaii v. United States,* 875 F.2d 747 (9th Cir.1989); *United States v. Stubbs,* 873 F.2d 210 (9th Cir.1989);

*United States v. Washington,* 797 F.2d 1461 (9th Cir.1986); and *United States v. Crozier,* 777 F.2d 1376 (9th Cir.1985).[3] Kissler's reliance is misplaced. He suffers from a common error in both civil and criminal litigation: to be mesmerized by dicta in appellate decisions. In order to be a precedent, the holding of an appellate decision must be analogous to the case under consideration. The holding has four parts: 1) a legal principal; 2) a set of facts; 3) the application of the principal to the facts; and 4) a conclusion. Unless the facts of the cited case and the case under consideration are closely analogous, the cases are distinguishable and the cited case is of little precedential value.

Generally, in evaluating search warrants permitting seizure of business records, the Ninth Circuit distinguishes between two circumstances. The first line of cases involve occupants who are engaged in a legitimate business on the premises and the government has probable cause to suspect that only a small segment of that business is involved in criminal activity. The second line of cases involve businesses primarily engaged in illegal activity, but have a legitimate veneer. *Compare Kow,* 58 F.3d at 427–28 (primarily legitimate business) *and Center Art Galleries–Hawaii,* 875 F.2d at 750–51 (warrant sought to uncover evidence of trafficking in forged Salvador Dali prints, but government knew that less than twenty percent of the business conducted on the premises involved illegal transactions) *with United States v. Offices Known as 50 State Distributing Company,* 708 F.2d 1371, 1374–75 (9th Cir.1983),

*cert. denied* 465 U.S. 1021, 104 S.Ct. 1272, 79 L.Ed.2d 677 (1984) (business permeated with fraud) *and United States v. Hernandez–Escarsega,* 886 F.2d 1560, 1568 (9th Cir.1989), *cert. denied,* 497 U.S. 1003, 110 S.Ct. 3237, 111 L.Ed.2d 748 (1990) (all of defendant's businesses permeated by drug dealing—legitimate businesses only a front). In this case, the evidence submitted to the magistrate clearly established that Kissler was conducting an illegal business from his home; transporting hunters for hire from an airstrip adjacent to his home. There was no suggestion that Kissler had any other legal business or that he had other business premises besides a permanent base camp at a remote hunting site. Kissler is incorrect when he suggests that the State only had probable cause to believe he had committed isolated transactions with Joseph Shearer ("Shearer") and Billy Shipp ("Shipp"). The State had proof beyond reasonable doubt of the Shearer and Shipp transactions because Shearer, an eyewitness-accomplice, testified to those transactions and his testimony was corroborated by the other evidence introduced to show that the Shearer and Shipp transaction was not an isolated incident but, rather, was part of an ongoing continuing criminal enterprise. The hearing before the state magistrate judge provided probable cause to believe that Kissler was engaged in an ongoing illegal business. *Holzman,* 871 F.2d at 1508–09 (where probable cause suggests continuing offense involving more than specific known incidents, search may look beyond specific instances of offense to find others).[4]

3. Kissler's primary concern seems to be overbreadth rather than particularity. The challenged language is particular in three respects: (1) it directs the agents to seize evidence of a specific crime—illegally transporting hunters for hire; (2) it directs their attention to a specific big game animal—Dall sheep; and (3) it guides the agents by providing a list of specific items: Freshly killed sheep head, pilot log books, records, writings, receipts, names and addresses of clients, bank account numbers, phone numbers of clients. Thus, the general terms, records, writings, and receipts are modified by the special term of clients, which is used in its descriptive sense of a customer (a big game hunter) who pays a fee for a service (transportation). Essentially, the warrant only authorizes the seizure of documents and other records which would identify "clients," *i.e.,* big game hunters who paid

Kissler a fee for transportation services. The evidence submitted to the state magistrate judge established probable cause to believe that many of these hunters would be non-residents of Alaska. *See United States v. Rodriguez,* 869 F.2d 479, 486–87 (9th Cir.1989).

4. Kissler mistakenly views this case as one in which the agents had complete and detailed knowledge regarding his records. Kissler analogizes this case to those in which the IRS first does an audit identifying specific records of wrongdoing and then fails to use the information supplied by the audit to narrow its quest in the warrant. Kissler's records were kept in his home beyond the reach of the agents without a warrant. There is no evidence that the agents had detailed knowledge of Kissler's business dealings. Kissler complains that the agents, who

Consequently, the warrant was not overbroad. There was probable cause to believe that all of Kissler's business dealings were illegal and any records of illegal transportation of hunters which identified the hunter (*i.e.*, client) were properly subject to search and, if found, seizure.

■ Kissler also argues that the evidence obtained shows other illegal businesses beyond transporting and thus this case is more properly analyzed under the *Kow* line of cases, as opposed to the *50 State* line of cases. Kissler is mistaken. *Kow* requires that a substantial part of the business conducted on the premises be legal. There is no evidence that any of Kissler's business was legal. More important, the other illegal businesses, "outfitting" and "guiding," were part of the evidence presented to the magistrate judge as dependant on transporting, *i.e.*, given Kissler's described mode of operation, flying his "clients" from the airstrip next to his home to a permanent base camp at a remote location, it was necessary for a client to be transported before he could be outfitted or guided. The fact that Kissler did not have licenses to guide or outfit is merely an additional factor that weighs against him. Finally, when we construe the warrants in a common sense way, as we must, the warrant in this case was sufficiently particular. *See, e.g., United States v. Ventresca*, 380 U.S. 102, 108, 85 S.Ct. 741, 745–46, 13 L.Ed.2d 684 (1965). Kissler relies upon *United States v. Washington*, for the proposition that even where a defendant's only business is illegal, a warrant for documents must be more particularized. 797 F.2d 1461, 1473 (9th Cir.1986). In *Washington*, however, the court found that there was no probable cause to believe that Washington was conducting any business in the place searched—his home. Here, there was substantial evidence that Kissler used his home and the adjacent airstrip as the center of gravity of his illegal business.[5]

■ Even if there was some deficiency in the particularity of the description, the good faith exception to the exclusionary rule would apply. *See, e.g., Massachusetts v. Sheppard*, 468 U.S. 981, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984); *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). In these cases, the Supreme Court held that the exclusionary rule should not be applied when the officer conducting the search acted in objectively reasonable reliance on a warrant issued by a neutral magistrate that is subsequently determined to be invalid. Here, there is no question that the state magistrate was neutral and heard testimony under oath under circumstances permitting him to evaluate the demeanor and credibility of the witnesses. One of the witnesses was Alaska State Trooper Tory Robert Oleck, who participated in the search. The other witness was a hunter who testified that Kissler charged him and another hunter $2,500 for flying them into the Brooks Mountain Range for hunting Dall sheep and caribou. *See* Docket No. 18, Exh. 1 at 10–20. Under these circumstances, the officer could reasonably rely upon the warrant. *See, e.g., United States v. Luk*, 859 F.2d 667 (9th Cir.1988). Kissler's suggestion that the warrant in this case was "so facially overbroad as to preclude reasonable reliance by the executing officer" is plainly wrong. First, as this Court has held, the warrant is not facially overbroad, but at the very least, whether it is overbroad is a matter about which reasonable men, women, and judges could differ. Where there is reasonable room for disagreement, it cannot be said that any decision is objectively unreasonable. In *Kow* and *Center Art Galleries–Hawaii*, the court held that it is objectively unreasonable as a matter of law to seize all the documents of a functioning legal business based upon probable cause to believe that a very small part of that

---

believed that Kissler had been involved in illegal activities for at most three years, did not specifically limit the search to documents produced during those years. Given the nature of Kissler's business and the location of the search, it is not clear that an express limitation to the years 1993 to present would have produced a less intrusive or less generalized search. *See Holzman*, 871 F.2d at 1509.

5. Courts must be sensitive to searches of the home. Where, however, there is probably cause to search a home, any difference between homes and business premises disappears. *United States v. Gomez–Soto*, 723 F.2d 649, 655 (9th Cir.1984), *cert. denied* 466 U.S. 977, 104 S.Ct. 2360, 80 L.Ed.2d 831 (1984).

business is infected by criminal actions. Here, there is no evidence that Kissler conducted any legal business from his home. Further, as we have seen, the warrant limited the search of documents to those which were evidence of the illegal transportation of hunters for compensation. Given the fact that an assistant district attorney prepared the warrant, the government has sustained its burden of proving that any error in the breadth of the warrant did not prevent the officers from relying upon it in objective good faith. *United States v. Michaelian*, 803 F.2d 1042, 1046-48 (9th Cir.1986). There was testimony that persuaded Magistrate Judge Branson that the officers conducting the search may have seized documents more closely related to illegal guiding and outfitting. However, even if the terms of the warrant were exceeded, that fact alone does not invalidate the entire search, unless the officer's conduct was flagrant. *See, e.g., Hernandez–Escarsega*, 886 F.2d at 1568 n. 3. Flagrant conduct, for example, exists if the searching officer exceeds the terms of the warrant to search and seize evidence of entirely unrelated crimes (*e.g.*, drug or theft offenses). Here, given the close nexus between illegal transportation and the outfitting and guiding of the persons transported, it is apparent that the officer did not exceed the terms of the warrant in order to search and seize evidence of other unrelated crimes.

### CONCLUSION:

Assistant District Attorney Jeffrey O'Bryant ("O'Bryant") was contacted in the middle of the night by Fish and Wildlife officers regarding the recent arrest of Shearer, an out of state hunter. The officers informed O'Bryant of their suspicions of Kissler as a provider of illegal transportation for a fee. O'Bryant knew that Shearer had been arrested in the presence of other hunters who would be expected to report back to Kissler, resulting in the immediate destruction of any incriminating records. The magistrate judge specifically found an emergency situation and authorized a search at any time of the day or night in order to prevent the destruction of evidence. It is this emergency

which establishes the particular circumstances that must be evaluated in determining whether this warrant is overbroad and sins against particularity. The warrant identifies a particular crime—transporting big game hunters for a fee—identifies a particular big game animal—Dall sheep—and in this context permits the search of business records and the seizure of those which helped to identify clients. The term client—a paying customer—was further limited by the reference to ALASKA STAT. § 08.54.520(9),[6] which, in context, limits the paying customers whose identity is sought to those big game hunters who purchase transportation to the hunting site from someone who is not licensed to provide the service, such as Kissler. In sum, given the circumstances under which it was issued, the place to be searched, and the nature of the underlying crime, the warrant was sufficiently particular and was not overbroad.

**IT IS THEREFORE ORDERED:**

The motion to suppress at **Docket No. 16** is **DENIED.**